18-3235-pr
*Janakievski v. Executive Director, Rochester Psychiatric Center*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2019

(Submitted: January 27, 2020      Decided: April 10, 2020)

Docket No. 18-3235

———————————————

STEVEN JANAKIEVSKI,

*Petitioner-Appellant*,

v.

EXECUTIVE DIRECTOR, ROCHESTER PSYCHIATRIC CENTER,

*Respondent-Appellee*.

———————————————

Before:

LEVAL, CABRANES, and LOHIER, *Circuit Judges*.

Petitioner Steven Janakievski appeals from the judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *J.*), dismissing his petition for a writ of habeas corpus. Janakievski's petition attacked his confinement in a state psychiatric institution as a person with a "dangerous mental disorder." The district court dismissed the petition on the grounds that it became moot when Janakievski was conditionally released from confinement. Held, because Janakievski remains subject to an "order of conditions" that leaves him vulnerable to recommitment, and the imposition of this order was a mandatory consequence of the confinement orders that his petition challenges, his conditional release does not render the petition moot. VACATED and REMANDED.

JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY, *for Petitioner-Appellant*.

LISA ELLEN FLEISCHMANN (Barbara D. Underwood, Solicitor General, Andrew W. Amend, Assistant Deputy Solicitor General for Criminal Matters, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, NY, *for Respondent-Appellee*.

LEVAL, *Circuit Judge*:

Petitioner Steven Janakievski appeals from the judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *J*.), dismissing as moot his petition for a writ of habeas corpus. In 2009, Janakievski was involuntarily committed to a New York State psychiatric institution after being charged with first-degree assault and pleading "not responsible by reason of mental disease or defect." N.Y. Crim. Proc. Law ("CPL") § 330.20. While in the custody of the New York State Office of Mental Health, Janakievski filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition challenged the validity of the original state-court order that found him to suffer from a "dangerous mental disorder" and committed him for six months to the Rochester

Psychiatric Center, as well as three subsequent orders that extended the duration of the confinement.

In 2018, several years subsequent to Janakievski's filing of the federal habeas petition, the state court found his mental condition sufficiently improved and ordered him conditionally released from inpatient custody, subject, as required by state law, to an order of conditions of at least three years duration. State law mandates that during that order's duration, he remain subject to the possibility of recommitment on the state's showing by a preponderance of the evidence that he has a dangerous mental disorder. *See* CPL § 330.20(14). The order of conditions further requires that he continue outpatient mental health treatment, refrain from the use of drugs or alcohol, and seek the state's approval before changing his address or leaving New York. That order remains in effect.

The district court dismissed Janakievski's habeas petition on the ground that it was moot. The court reasoned that the limited-duration orders of confinement that the petition challenged had all expired and that Janakievski had been released from inpatient custody, with the consequence that he no longer suffered "an actual injury which is likely to be redressed by

3

a favorable decision." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, No. 6:14-cv-06168, 2018 WL 4681596, at \*3 (W.D.N.Y. Sept. 28, 2018) (quoting *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999)).

We conclude that Janakievski's release from inpatient custody did not moot his habeas petition because the orders attacked in the petition continue to impose restrictions on his liberty. The 2018 order of conditions to which Janakievski remains subject — but which Janakievski did not directly challenge in his habeas petition — was, under state law, a mandated consequence of the confinement orders he challenges, and constitutes an ongoing injury that can be redressed by a favorable decision. We accordingly VACATE the district court's judgment and REMAND for further proceedings.

**BACKGROUND**

In December 2007, Janakievski attacked a co-worker with a knife, causing life-threatening stab wounds to the victim's head and neck. At the time, Janakievski had been using controlled substances daily and experienced psychotic delusions, including a belief that the stabbing victim was a Russian spy. He was charged with first-degree assault and tried in the County Court

for Monroe County, New York. At trial, psychiatric experts for the prosecution and the defense agreed that, at the time of the knife attack, Janakievski was suffering from a psychotic disorder and did not appreciate the wrongfulness of his conduct. The court accordingly accepted Janakievski's plea of not responsible by reason of mental disease or defect pursuant to CPL § 330.20.

CPL § 330.20(2) provides that when a criminal defendant is found not responsible by reason of a mental disease or defect, he must undergo a psychiatric examination. On the basis of that examination, the state court is directed to determine in which of three categories, or "tracks," the defendant belongs.[1] If he is found to have a "dangerous mental disorder," defined as a mental illness that renders him "a physical danger to himself or others," CPL § 330.20(1)(c), then he is classified as "track one" and the court must issue a commitment order confining the defendant in a secure mental health facility for six months. *Id*. § 330.20(6), (1)(f). If the court finds that the defendant is mentally ill but not dangerous, he is classified as "track two" and the court

---

[1] Although the statute itself does not use the term "tracks" to label its three-tiered system, New York courts and commentators frequently describe its classifications that way. *See In re Norman D.*, 3 N.Y.3d 150, 153 n.1 (2004).

must issue an "order of conditions"[2] and an order committing him to a non-secure facility, which custody is governed not by the Criminal Procedure Law but by the civil Mental Hygiene Law. *Id*. § 330.20(7); *see also Allen B. v. Sproat*, 23 N.Y.3d 364, 368–69 (2014). If the defendant is found to be neither dangerous nor mentally ill, he is classified as "track three" and must either be discharged unconditionally or released subject to an order of conditions. CPL § 330.20(7). The status of a "track one" defendant remains subject to ongoing review, and the state must apply for periodic "retention orders" to keep a defendant in inpatient custody. *Id*. § 330.20(8), (9). A defendant's "track status," however, is permanent and "governs [his] level of supervision in future proceedings." *In re Norman D.*, 3 N.Y.3d 150, 152 (2004).

In April 2009, having undergone the required examination, Janakievski was found by the state court to suffer from a dangerous mental disorder (i.e., to be in "track one") and was committed to the Rochester Psychiatric Center ("RPC"). The state court issued subsequent retention orders continuing his involuntary commitment in October 2009, October 2010, December 2010, and

---

[2] An "order of conditions" is an order that, *inter alia*, requires a defendant to comply with a particular treatment plan or any other condition which the court determines to be reasonable, and is "valid for five years from the date of its issuance." CPL § 330.20(1)(o).

August 2012, on the ground that Janakievski continued to suffer from mental illness. In the last of these orders, the court determined that Janakievski was no longer dangerous but remained mentally ill and in need of inpatient treatment. The August 2012 retention order expired in July 2013, but Janakievski continued to be confined in a non-secure wing of the RPC pursuant to a temporary retention order.

In April 2014, Janakievski, proceeding *pro se*, filed the instant habeas petition in the United States District Court for the Western District of New York. The petition asserted a range of statutory and constitutional violations with respect to the original April 2009 commitment order, the October and December 2010 retention orders, and the August 2012 retention order. The petition challenged the sufficiency of the evidence supporting the original finding that he was dangerous and mentally ill, asserting that at the time of his commitment to the RPC "the hospital records show that he was in full remission," and that he "should have been released." Supp. App'x at 42. He also alleged that the initial commitment order violated his right to due process and the Eighth Amendment. With respect to the subsequent retention orders, Janakievski asserted that they, too, were not supported by sufficient

7

evidence, that they violated due process (as well as the Federal Rules of Civil Procedure), and that he was deprived of the effective assistance of counsel. As relief, Janakievski demanded that the commitment and retention orders be vacated and that he be unconditionally discharged from state custody.

In June 2018, while this petition to the federal court was pending, the state court released Janakievski from the RPC subject to an "order of conditions." Supp. App'x at 245-52; *see* CPL § 330.20(12). The ruling was based on a finding that Janakievski's clinical condition warranted "conditional release from inpatient treatment" because he did not "currently suffer from a dangerous mental disorder and [was] not mentally ill." Supp. App'x at 247. The order of conditions mandated that for three years (until June 2021) Janakievski continue outpatient mental health treatment, refrain from the use of drugs or alcohol, and seek the state's approval before changing his address or leaving the state. The conditions may be extended for an additional three years on a showing of good cause by the state.

In addition to these particular conditions — all of which were found by the state court in June 2018 to be "reasonably necessary or appropriate" for Janakievski's treatment, CPL § 330.20(12) — Janakievski faces an overarching

restriction that is inherent to any "order of conditions" under CPL § 330.20. Any defendant subject to an order of conditions can, at any time, be recommitted upon application of the state, based on a showing by a preponderance of the evidence that the defendant suffers from a dangerous mental disorder. *See* CPL § 330.20(14); *Ernst J. v. Stone*, 452 F.3d 186, 187 (2d Cir. 2006). When the state makes such an application, the court must order the defendant to appear for a hearing, and if the defendant fails to appear he can be arrested, brought before the court, and confined. *See* CPL § 330.20(14). If the court finds that the defendant has a dangerous mental disorder, it must issue a "recommitment order" mandating his confinement to a secure facility for six months. *Id.*; *see also id.* § 330.20(1)(f).

In dismissing Janakievski's petition in September 2018, the district court reasoned that the petition became moot when Janakievski was conditionally released from inpatient custody, as he was "no longer subject to any of the orders" that he challenged in his petition and thus no longer had any redressable injuries. 2018 WL 4681596, at *3. The district court declined to issue a certificate of appealability, *id.*, but a motions panel of our court

granted one on the question "whether the district court erred in dismissing Appellant's 28 U.S.C. § 2254 petition as moot," Dkt. No. 30.

**DISCUSSION**

We review *de novo* the denial of a petition for a writ of habeas corpus, including whether the petition is moot. *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016). Although Janakievski is now represented by counsel, we construe his *pro se* "submissions liberally and interpret them to raise the strongest arguments they suggest." *Id*. (citation and quotation marks omitted).

**I. Law Governing the Mootness of a Habeas Petition**

To satisfy the Constitution's case-or-controversy requirement, a party must, at each stage of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision. *See Mercurris*, 192 F.3d at 293. If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness.

A habeas petition is generally not moot so long as the petitioner continues to be held in the custody that he alleges is unlawful. *See Dhinsa v. Krueger*, 917 F.3d 70, 77 n.5 (2d Cir. 2019). That is so whether the petitioner is experiencing direct physical custody (e.g., incarceration), or is subject to restraints on his liberty, such as parole. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("An incarcerated convict's (or a parolee's) challenge to the validity of his conviction *always satisfies* the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." (emphasis added)); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (habeas petition was not mooted by petitioner's release on parole because "[w]hile petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom"). Moreover, a habeas petition "does not necessarily become moot" when the order it challenges is no longer in effect, so long as the petitioner suffers "some concrete and continuing injury" or "collateral consequence" resulting from the challenged order. *Mercurris*, 192 F.3d at 293 (citation omitted).

11

Finally, even if a habeas petitioner can show that he continues to suffer an injury, his injuries must be "likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation and quotation marks omitted). A case is moot when the prospect of judicial redress is "so remote and speculative that any decision on the merits" could not "affect the matter in issue in the case." *United States v. Blackburn*, 461 F.3d 259, 262 (2d Cir. 2006) (citation and quotation marks omitted). The availability of a "partial remedy," however, is sufficient to render a case not moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992). A case is "moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (citation and quotation marks omitted).

**II. Janakievski Continues to Suffer a Redressable Injury Resulting From the Confinement Orders Challenged by the Petition**

Notwithstanding that the 2009-2012 orders challenged in his habeas petition are no longer in effect, Janakievski contends that he faces continuing consequences from them such that a favorable decision vacating them would provide him meaningful relief. One such continuing consequence, he asserts, is the "order of conditions" to which he remains subject, which requires him

12

to receive outpatient treatment and also leaves him vulnerable to recommitment. The order of conditions is not set to expire until June 2021 at the earliest, and Janakievski argues that were a court to grant the relief sought in his habeas petition, he could be rid of these restrictions sooner.

Respondent argues that the petition is moot because it attacks confinement orders that have expired and that do not themselves continue to impose a burden. Respondent concedes that the 2018 order of conditions constitutes an injury for Janakievski. But Respondent notes that the habeas petition does not challenge the 2018 order itself and argues that the restrictions imposed by the 2018 order were not "lingering effect[s]" of the expired 2009-2012 confinement orders challenged in the habeas petition, but rather were conditions "implemented to further his mental fitness as assessed in 2018." Resp. Br. at 33. Accordingly, Respondent argues, even if Janakievski were to prevail on the merits of his petition and the district court were to nullify the challenged orders, he "would not be entitled to unconditional discharge" from his 2018 order of conditions. *Id.* at 24.

We conclude that at least one of the ongoing restrictions on Janakievski's liberty embodied in the June 2018 order of conditions — in

particular, the fact that under state law he remains more vulnerable to recommitment — constitutes "an actual injury traceable to the [orders challenged by his petition] and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7. A decision by the habeas court to grant Janakievski's petition and vacate the challenged orders would give him the chance to be immediately rid of the burdens imposed by the order of conditions, rather than having to wait until its expiration.

As an initial matter, although it is true that Janakievski's habeas petition does not challenge the 2018 order of conditions itself, the district court should have, before dismissing the petition as moot, given Janakievski the opportunity to amend his habeas petition to raise such a claim. A *pro se* plaintiff should be granted leave to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and quotation marks omitted). We have said that this rule applies with special force to habeas corpus petitions, since *pro se* habeas petitioners "ordinarily lack legal knowledge and resources." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016). Here, the district court should have

taken note of the restrictions imposed on Janakievski's liberty by the 2018 order of conditions and afforded him the opportunity to amend his petition to challenge them directly, instead of dismissing the petition as moot for having challenged only the expired orders. On remand, Janakievski must be given such a chance.[3]

The district court also erred in concluding that Janakievski no longer suffers, as a continuing consequence of the challenged 2009 to 2012 orders, an actual injury redressable by a favorable decision. The 2018 order of conditions to which Janakievski remains subject today constitutes a "concrete and continuing injury" traceable to the challenged orders. *Mercurris*, 192 F.3d at 294. Although Respondent is correct that the 2018 order of conditions is a separate order from the expired commitment and retention orders challenged by Janakievski, its imposition was a direct and necessary consequence of the expired orders. The April 2009 commitment order found Janakievski to be

---

[3] In the event that Janakievski chooses to challenge on remand the 2018 order of conditions directly, whether such a claim would be procedurally viable or meritorious is a question for the district court to address in the first instance, and on which we express no view. *See Dorsey v. Irvin*, 56 F.3d 425, 427 (2d Cir. 1995) (remanding the denial of a *pro se* habeas petition to give petitioner the opportunity to amend to include new claims, but expressing no views as to the merits or procedural viability of those claims).

dangerously mentally ill and accordingly assigned him to "track one," a finding that not only required his commitment but also determined the procedures that would govern any future "retention, conditional release or discharge." *Jamie R. v. Consilvio*, 6 N.Y.3d 138, 143 (2006). Of relevance here, CPL § 330.20 provides that a track one defendant can be released from confinement in a secure facility either (1) by an order *transferring* the defendant to a non-secure facility upon a finding that the defendant no longer has a "dangerous mental disorder," CPL § 330.20(11), or (2) through an order *releasing* the defendant from state custody upon a finding that the defendant is no longer mentally ill, *see id.* § 330.20(12). Under either option, the court must issue an order of conditions along with the transfer or release order. *See id.* § 330.20(11) (providing that the court "must also issue an order of conditions" along with the transfer order); *id.* § 330.20(12) (providing that "[i]f the court finds that [a track one defendant] does not have a dangerous mental disorder and is not mentally ill," it must nonetheless issue an order of conditions along with a release order); *In re Oswald N.*, 87 N.Y.2d 98, 102 (1995) ("Whenever a court issues either a release order or a transfer order . . . it must also issue an order of conditions."); *see also Jamie R.*, 6 N.Y.3d at

16

143 ("[E]ven a track one patient who improves sufficiently to be transferred to a nonsecure facility continues to be subject to the procedural restrictions in CPL [§] 330.20." (citation omitted)). Put another way, once the state court declared Janakievski to be dangerously mentally ill in 2009 — a finding he directly challenges in his petition — it was inevitable that, once released from confinement, he would be subject to an order of conditions.[4]

It is true, as Respondent asserts, that even if an order of conditions was a necessary consequence of the expired orders, specific conditions contained in Janakievski's 2018 order of conditions — such as mandatory outpatient treatment, drug screenings, and limits on his mobility — were *not* the inevitable result of Janakievski's earlier confinement orders. These restrictions were imposed on the basis of a new assessment of Janakievski's mental fitness in 2018. Resp. Br. at 33; *see also* CPL § 330.20(12) (authorizing the state court to

---

[4] Such an order of conditions would remain in effect until the issuance of a "discharge order" terminating the order of conditions, *see* CPL § 330.20(1)(n); *Matter of Ramon M.*, 294 A.D.2d 59, 64 (1st Dep't 2002), which the court may issue only after finding that the defendant has been continuously on outpatient status for three years or more, that the defendant is not mentally ill, and that the discharge order is "consistent with the public safety and welfare of the community and the defendant," CPL § 330.20(13); *see also* Resp. Br. at 9, 29–30.

include in an order of conditions "any conditions that the court determines to be reasonably necessary or appropriate").

Crucially, however, as to two aspects of the order of conditions, the state court had no discretion. First, under the governing law, Janakievski could not be eligible for a discharge order terminating the order of conditions until he had spent three years as an outpatient following his conditional release from confinement. *See* CPL § 330.20(13).[5] Second, under CPL § 330.20(14), at any time while an order of conditions remains in effect, the person affected remains subject to recommitment if, upon the application of the state, a court finds by a preponderance of the evidence that the defendant has a "dangerous mental disorder." *See* CPL § 330.20(14) ("At any time during the period covered by an order of conditions an application may be made by the commissioner or the district attorney . . . for a recommitment order when the applicant is of the view that the defendant has a dangerous mental

---

[5] Although CPL § 330.20(13) does not explicitly state that the subject is ineligible for a discharge order terminating the order of conditions until the passage of three years, that is implicit in its provision that "[t]he commissioner may apply for a discharge order . . . when a defendant has been continuously on an out-patient status for three years or more pursuant to a release order." Indeed, Respondent relies on CPL § 330.20(13) for the proposition that Janakievski is ineligible for a discharge order until June 2021 — three years after the issuance of his order of conditions — in support of its argument that his injury is not redressable. Resp. Br. at 41–42.

disorder."); *Ernst J.*, 452 F.3d at 187 (2d Cir. 2006) ("Those defendants who are [] released subject to an 'order of conditions' may, if their condition deteriorates, be 'recommitted' involuntarily to a secure psychiatric facility upon a finding — by a preponderance of the evidence — that they have developed a 'dangerous mental disorder.'"). Merely upon the application of the state, Janakievski would be ordered to appear for a hearing, and if he failed to appear, he could be subject to a warrant to be taken into custody and confined pending the hearing. *See* CPL § 330.20(14).

Because Janakievski is subject to an order of conditions, the burden on the state to cause his recommitment would be less than the burden to cause his commitment by reason of mental disease if he had previously been unconditionally discharged. "New York statutes . . . distinguish between the procedures to be followed for the involuntary civil commitment of persons suffering from mental illness and the procedures that apply to persons charged with a crime and determined, by a plea or a verdict, to be 'not responsible by reason of mental disease or defect.'" *Francis S. v. Stone*, 221 F.3d 100, 101 (2d Cir. 2000) (quoting CPL § 220.15). Whereas involuntarily committing an individual for mental illness normally requires a showing by

19

"clear and convincing evidence" that the person is mentally ill and poses a danger to himself or others, recommitment pursuant to CPL § 330.20(14) requires a lesser showing by a preponderance of the evidence. *Ernst J.*, 452 F.3d at 188–90.

Accordingly, even though other conditions imposed by the 2018 order did not flow from the earlier orders challenged in Janakievski's petition, but were instead newly justified at the time based on a current assessment of Janakievski's treatment needs, the earlier orders did have the inevitable consequence of requiring that he eventually be subject to an order of conditions, and thus of making him vulnerable for a minimum of three years to recommitment in a state psychiatric facility without the same protections that he would enjoy if he had previously been released from custody unconditionally. The district court thus erred in concluding that Janakievski's release from inpatient treatment meant that he was no longer suffering a continuing injury from the expired orders.

The only remaining question, then, is whether the burden imposed on Janakievski by the order of conditions might be redressed by a favorable judicial decision vacating either the 2009 commitment order or the

subsequent retention orders issued in 2010 and 2012. Respondent argues that any injuries Janakievski suffers are not redressable, asserting that a favorable decision by the habeas court nullifying the challenged orders would not relieve Janakievski of his order of conditions. Respondent argues that under CPL § 330.20(1)(n) and (13), a discharge order is necessary to unconditionally release a defendant and terminate his order of conditions, and a discharge order may issue only "if the court finds that the defendant has been continuously on an out-patient status for three years or more, that he does not have a dangerous mental disorder and is not mentally ill, and that the issuance of the discharge order is consistent with the public safety and welfare of the community and the defendant." *Id.* § 330.20(13). According to Respondent, no matter the outcome of Janakievski's habeas proceedings, he would still need to wait three years and demonstrate that his release would comport with public safety before being eligible for an order terminating his order of conditions.

We reject this argument. As noted above, the state court's imposition of an order of conditions was a direct and mandated consequence of the prior confinement orders that Janakievski challenges in his habeas petition. A

21

"track one" defendant such as Janakievski cannot achieve unconditional release without first being subjected to an order of conditions, and cannot obtain a discharge order terminating that order of conditions without having been on outpatient status for at least three years. *See* CPL § 330.20(13). By contrast, had the state court never found Janakievski to be dangerous or mentally ill — that is, had he been placed in "track three" instead of "track one" — then Janakievski could have been discharged unconditionally in 2009 and the court would not have been compelled to impose an order of conditions. *See* CPL § 330.20(7); *see also Richard S. v. Carpinello*, 589 F.3d 75, 77 (2d Cir. 2009). Today, if Janakievski were to prevail on the merits of his habeas petition by demonstrating that he should have been unconditionally discharged in 2009, that showing would negate Respondent's argument that Janakievski is subject to CPL § 330.20(13)'s three-year outpatient requirement for terminating an order of conditions, because no order of conditions should have issued in the first place. If, for example, a federal court were to determine on a habeas petition that a petitioner's initial confinement, based on a state judge's finding of dangerous mental illness, should be voided because it was procured by hostile relatives through bribery, the state could

22

not, consistent with federal law, continue to subject the petitioner to an order of conditions for three years merely because such a waiting period is mandated by state law for one who, in the initial instance, was properly confined on the basis of a dangerous mental illness. Just as a term of parole stemming from a criminal conviction is an injury redressable by the vacatur of that conviction, *see Spencer*, 523 U.S. at 7, the parole-like order of conditions here could, at least in some circumstances, be invalidated on a showing that Janakievski's initial commitment to the psychiatric institution violated federal law.[6]

Vacatur of the 2010 and 2012 retention orders that extended the duration of Janakievski's confinement could also serve to partially redress Janakievski's injuries. Janakievski contends that, even if he failed to show that he was entitled to an unconditional discharge in April 2009, but nonetheless showed entitlement to an *earlier* conditional release at the time of one of the court's prior retention orders — *e.g.,* in August 2012 — "then the three-year

---

[6] *Cf. Carty v. Nelson*, 426 F.3d 1064, 1072 (9th Cir. 2005) (sex offender's release from civil confinement did not moot his habeas petition because a finding that his initial confinement had been invalid would allow the court to vacate his post-release reporting requirements, where the habeas petition challenged only the initial confinement).

23

post-release period specified in [] CPL § 330.20(13) would be backdated" and he would not necessarily have to wait until July 2021 to become eligible for a discharge order terminating his order of conditions. Supp. Br. of Petitioner at 19. Respondent argues that no such "back-dating" would occur, because the requirement that a defendant spend at least three years in outpatient treatment before final discharge serves the important goal of protecting the public from the release of potentially dangerous patients. Resp. Br. at 42 (citing *Matter of Ramon M.*, 294 A.D.2d 59, 65 (1st Dep't 2002)). Accordingly, Respondent asserts that "a habeas determination that Janakievski should have been released in 2010 or 2012 would not *in itself* entitle him to a discharge order today," because "[h]e would still have to show that the issuance of such an order was 'consistent with the public safety and welfare of the community and [himself].'" Resp. Br. at 42–43 (quoting CPL § 330.20(13) (emphasis added)).

However, even if Janakievski would need to affirmatively demonstrate that he was fit for immediate release, the opportunity to do so would still constitute a "partial remedy" sufficient to support a finding of redressability. *Church of Scientology*, 506 U.S. at 13. The chance to make that showing *now*

versus in 2021 would provide Janakievski with "*some* form of meaningful relief," *id*. at 12 (emphasis in original), as it would give Janakievski the possibility of obtaining a discharge order releasing him from the restrictions mandated by his order of conditions without having to live under them for another year or more. *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) ("[I]n the context of multi-part proceedings," redressability should be based on the "availability of relief at a given step, rather than the likelihood of achieving the ultimate goal." (citation omitted)). Given that the state court found in 2018 that Janakievski "does not currently suffer from a dangerous mental disorder and is not mentally ill," Supp. App'x at 247, it is not too remote or speculative to think that Janakievski might be able to demonstrate that his release would be consistent with public safety.

We accordingly conclude that Janakievski's habeas petition is not moot because the restrictions on his liberty mandated by the June 2018 order of conditions constitute a concrete and continuing injury, traceable to the 2009–2012 confinement orders he attacks, which can be redressed by a favorable decision.

25

**III.    Alternate Grounds for Affirmance**

Respondent asserts that, even if we reject the district court's mootness finding, we can nonetheless affirm on independent grounds, at least as to several of Janakievski's claims. Respondent argues that Janakievski's challenges to the 2009 and 2010 orders "are untimely and were not exhausted in state court," and, because they "cannot be exhausted at this juncture," are "procedurally barred from habeas review." Resp. Br. at 24.

In habeas cases, we generally do not address a claim outside the scope of the certificate of appealability. *See Valverde v. Stinson*, 224 F.3d 129, 136 (2d Cir. 2000). Here, as the certificate of appealability is limited to the question of mootness, and as the district court did not address the state's timeliness, exhaustion, and procedural default arguments, we decline to address those arguments and express no view as to whether they are meritorious.

**CONCLUSION**

For the foregoing reasons, we VACATE the district court's judgment dismissing Janakievski's habeas petition as moot and REMAND for further proceedings.