20-2078
Conn. Citizens Def. League, Inc. v. Lamont

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2020
No. 20-2078

CONNECTICUT CITIZENS DEFENSE LEAGUE, INC.; AMY JONES; TODD SKILTON; JOHN
LOWMAN; JOSEPH COLL; TANYSHA BROWN; DANIEL GERVAIS,
Plaintiffs-Appellees,

v.

NED LAMONT, JAMES ROVELLA,
Defendants-Appellants,

PAUL MELANSON, ANDREW COTA, BRIAN GOULD, JAMES KENNY,
Defendants.

ARGUED: MAY 21, 2021
DECIDED: JULY 28, 2021

Before:    JACOBS, SACK, CHIN, Circuit Judges.

Connecticut Governor Ned Lamont and the state's Commissioner of the

Department of Emergency Services and Public Protection ("DESPP") James

Rovella appeal from an order of the United States District Court for the District

of Connecticut (Meyer, J.) granting a preliminary injunction ("PI"). In response

to the COVID-19 pandemic, an executive order permitted police agencies to suspend collection of fingerprints in connection with applications for authorization to obtain firearms. The PI ordered that the Governor repeal that provision of the executive order and that the DESPP Commissioner resume fingerprinting services at that agency. We vacate the PI on the ground that it was issued without jurisdiction.

_____

DAVID D. JENSEN, David Jensen PLLC, Beacon, NY, for Plaintiffs-Appellees.

STEPHEN R. FINUCANE (Matthew B. Beizer, on the brief), for WILLIAM TONG, Attorney General & CLARE KINDALL, Solicitor General, for Defendants-Appellants.

DENNIS JACOBS, Circuit Judge:

Amid the COVID-19 pandemic, Connecticut Governor Ned Lamont empowered police agencies to refuse to collect the fingerprints of applicants seeking authorization to obtain firearms. In response, fingerprinting services were suspended by several municipal police departments, as well as the state's Department of Emergency Services and Public Protection ("DESPP"). Because fingerprinting is a prerequisite for an application for authorization to obtain

2

firearms in Connecticut, the plaintiffs claimed infringement of their Second Amendment rights.

Five out of the six individual plaintiffs were turned away when they sought fingerprinting at their respective local police departments, all of which later agreed to resume fingerprinting services. The sixth individual plaintiff, Daniel Gervais, succeeded in having his fingerprints collected, and received a temporary permit from his local law enforcement agency. His allegation is that DESPP refused to process his application for a more permanent "state" permit. Organizational plaintiff the Connecticut Citizens Defense League, Inc. ("CCDL") is a non-profit that seeks to protect Second Amendment rights.

The United States District Court for the District of Connecticut (Meyer, J.) issued a preliminary injunction ("PI") ordering the Governor to require the resumption of fingerprinting services and DESPP Commissioner James Rovella (the "Commissioner") to resume fingerprinting at that agency.

The Governor and Commissioner appeal on grounds of standing and on the merits. We conclude that: (1) with respect to the individual plaintiffs, the PI motion became moot in the district court; and (2) CCDL lacked organizational

3

standing.  Because the motion was moot and CCDL lacked standing, the district court had no jurisdiction to issue the PI.  Accordingly, the PI is vacated.

# I

A person seeking permission to obtain a firearm in Connecticut must provide fingerprints to the appropriate authority to facilitate a criminal-history check.  See Conn. Gen. Stat. §§ 29-29(b), 29-36g(a), 29-37q(a).  As relevant here, the state offers three forms of authorization to acquire firearms:

1) a permit to "purchase," "receive" and "carry" a pistol or revolver ("pistol permit"), id. §§ 29-28(b), 29-33(b), 29-35(a);

2) a "handgun eligibility certificate," which authorizes a person to "purchase or receive" (but not to carry) a pistol or revolver,[1] id. §§ 29-33(b), 29-36f; and

3) a long gun "eligibility certificate," which authorizes a person to "purchase or receive" a long gun, id. §§ 29-37a(c), 29-37p(a).

---

[1] We adopt the nomenclature used by the parties.  Accordingly, the permit to purchase, receive and carry a pistol or revolver is a "pistol permit"; and the certificate of eligibility to purchase and receive a pistol or revolver is a "handgun eligibility certificate."

A Connecticut resident seeking a pistol permit must first apply to the local

"chief of police, or, where there is no chief of police, to the warden of the

borough or the first selectman of the town," id. § 29-28a(a), for a temporary

permit and submit to fingerprinting, id. §§ 29-28(b), 29-29(b).  The temporary

permit expires after 60 days and is non-renewable.  Id. § 29-30(c).  Once the

temporary permit is issued, the Commissioner may issue a "state permit," which

expires after five years and can be renewed.  Id. §§ 29-28(b), 29-30(c).  A person

seeking a handgun or long gun eligibility certificate must apply directly to

DESPP, which is required to take the applicant's fingerprints.  Id. §§ 29-36f(a), 29-

36g(a), 29-37p(a), 29-37q(a).  No temporary authorization from the local police

chief is required.  In short, the applicant's local police department conducts

fingerprinting for pistol permits, and DESPP conducts fingerprinting for

handgun and long gun eligibility certificates.


**II**

Connecticut law normally prohibits DESPP and municipal police

departments from "refus[ing] to collect the fingerprints of a person" seeking a

criminal-history check.  Id. § 29-17c(a).  However, on March 10, 2020, Governor

5

Ned Lamont declared a public health and civil preparedness emergency because of the pandemic, and, on March 17, he invoked his emergency powers to issue Executive Order 7E ("EO 7E").

As relevant here, § 2 of EO 7E permitted DESPP and municipal police departments to limit, or eliminate altogether, fingerprint collection for purposes of criminal-history checks. (In functional terms, § 2 suspended the statute that prohibits these entities from refusing to collect fingerprints.) The stated purpose of § 2 was to prevent the transmission of COVID-19--which might occur during the fingerprinting process--and to enable police personnel to concentrate efforts on responding to the public-health crisis. Section 3 permitted the DESPP Commissioner to extend the expiration dates of pistol and certain other permits.

On the day that EO 7E issued, the Commissioner (1) suspended fingerprinting services at DESPP and (2) extended by 90 days (subject to further extension) the expiration dates for pistol and certain other types of permits that would have otherwise expired on or after March 1, 2020. Municipal police departments in Vernon, Farmington, Ansonia and Bristol also suspended fingerprinting services.

Five out of the six individual plaintiffs--Joseph Coll, Amy Jones, Todd Skilton, John Lowman and Tanysha Brown--sought to have their fingerprints taken at and to submit temporary pistol permit applications to their respective local police departments in these municipalities.[2]  Because those police departments had suspended fingerprinting services in accordance with EO 7E, the plaintiffs were turned away and therefore could not apply for the temporary pistol permits they wanted.  The sixth individual plaintiff, Daniel Gervais, had his fingerprints taken and a temporary pistol permit issued by his local law enforcement agency; but DESPP refused to process his application for a *state* pistol permit, even though no additional fingerprinting was required at that stage.

CCDL is a non-profit whose mission "is to preserve the effectiveness of the Second Amendment through legislative and grassroots advocacy, education, research, publishing, legal action and programs focused on the Constitutional right to keep and bear firearms."  App. at 168 ¶ 9.  CCDL's president, Holly

---

[2] Plaintiffs Coll and Brown already had their fingerprints on file with the state of Connecticut because their jobs--a schoolteacher and bank security guard, respectively--required background checks.  While they were not required to have their fingerprints taken again in connection with their pistol permit applications, they were nevertheless turned away when they attempted to apply for temporary pistol permits.

Sullivan, fielded complaints from individuals across Connecticut who sought pistol permits and could not obtain them because of EO 7E. On April 10, 2020, Sullivan wrote a letter to the Governor seeking repeal of EO 7E § 2 and advising that CCDL would otherwise file suit. EO 7E § 2 remained in effect.

On May 9, 2020, the plaintiffs filed suit against the Governor and Commissioner, as well as the police chiefs for Vernon, Farmington, Ansonia and Bristol; and on May 15, the plaintiffs filed an amended complaint alleging several civil rights violations under 42 U.S.C. § 1983, including, as relevant here, the deprivation of their Second Amendment rights to keep and bear arms. The plaintiffs also moved for a temporary restraining order ("TRO") or a preliminary injunction ("PI") requiring the resumption of fingerprinting services.[3]

Before a decision on the PI motion issued, circumstances changed. First, the police-chief defendants resumed fingerprinting at their respective departments. Accordingly, the plaintiffs withdrew the PI motion as against the police-chief defendants and continued to pursue relief against only the Governor and Commissioner. Second, DESPP resumed processing permit applications. Third, the Commissioner announced that DESPP would resume fingerprinting

_____

[3] The district court declined to issue a TRO on procedural grounds and construed the plaintiffs' motion as seeking only a PI.

services on June 15, 2020.  Finally, the Governor indicated that he intended to repeal EO 7E § 2 (thereby ending the suspension of the statutory fingerprint-collection requirement), effective June 15.

Nevertheless, on June 8, 2020, the district court (Meyer, J.) granted the motion and issued a PI ordering that: (1) by June 15, the Governor repeal EO 7E § 2; and (2) by the same date, the Commissioner resume fingerprint collection at DESPP.  As relevant on appeal, the district court first concluded that all plaintiffs had standing to seek injunctive relief.  The court then concluded that the PI motion was not moot notwithstanding the Governor's and Commissioner's stated intention, because (i) the court was not convinced that EO 7E § 2 would be repealed and that fingerprinting would resume by June 15, and (ii) the voluntary undertaking by the Governor and Commissioner to require the resumption of fingerprinting services afforded inadequate assurance that they would not suspend fingerprinting in the future.  The district court then reached the merits and determined that a PI was justified.

The Governor and Commissioner complied with the PI and now appeal the order that granted it.

The Governor and Commissioner first argue that the plaintiffs lacked standing to pursue the PI. Properly considered, however, the argument is one of mootness: that by the time the PI issued, any alleged harms the plaintiffs suffered had already dissipated.

While standing doctrine focuses "on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008); Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 126 (2d Cir. 2020), "mootness doctrine ensures that [a] litigant's interest in the outcome continues to exist throughout the life of the lawsuit," Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993). "If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." Janakievski v. Exec. Dir., Rochester Psychiatric Ctr., 955 F.3d 314, 319 (2d Cir. 2020). A case becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Id. (quoting Knox v. Serv. Emps. Int'l Union, Loc. 1000, 567 U.S. 298, 307 (2012)).

We generally review de novo questions of standing and mootness.  Shain v. Ellison, 356 F.3d 211, 214 (2d Cir. 2004); Amador v. Andrews, 655 F.3d 89, 95 (2d Cir. 2011).

## A. Gervais

Before this lawsuit was filed, the local law enforcement agency had taken Gervais' fingerprints and had issued him a temporary pistol permit.  Gervais complained only that DESPP refused to process his application for a state pistol permit.  However, DESPP resumed processing applications before the PI hearing.  Accordingly, Gervais was no longer suffering any redressable injury when the PI issued; there was no "effectual relief" that the district court could have granted him.[4]  Janakievski, 955 F.3d at 319 (quoting Knox, 567 U.S. at 307).  His request for a PI was therefore moot.

Moreover, the plaintiffs' brief on appeal does not respond to the assertion that Gervais lacked standing (which we have recast as an issue of mootness).  Gervais therefore waived any argument that his controversy remained live.  See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently

---

[4] In fact, the PI provides no relief to Gervais, as it requires the resumption of fingerprinting but is silent as to processing applications.

argued in the briefs are considered waived and normally will not be addressed on appeal.").

## B. Remaining Individual Plaintiffs

By the time the PI issued, any alleged harms suffered by the remaining five individual plaintiffs--Jones, Skilton, Lowman, Coll and Brown--had already dissipated because their local police departments had resumed fingerprinting. Nevertheless, the district court concluded that the PI motion was not moot. It applied the principle that the "'voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,'" and reasoned that, notwithstanding their stated intention to reinstate fingerprinting requirements, the Governor and Commissioner might "seek to discontinue fingerprinting again in the future." Conn. Citizens Def. League, Inc. v. Lamont, 465 F. Supp. 3d 56, 68–69 (D. Conn. 2020) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).

It is true that the "voluntary cessation" of a defendant's conduct might not moot a controversy if there is a finding that the defendant could do it again. But the event that brought about mootness here was not the Governor and

12

Commissioner's "voluntary cessation"; as explained below, it was the voluntary decision of the municipal police chiefs to resume fingerprinting, and the plaintiffs' withdrawal of the PI motion as against the police chiefs in response.

*i. The Mooting Event*

When the plaintiffs withdrew the PI motion as against the police chiefs, it became impossible for the district court to grant them "any effectual relief whatever." Janakievski, 955 F.3d at 319 (quoting Knox, 567 U.S. at 307). A PI ordering the *Governor* to repeal EO 7E § 2 provides nothing to plaintiffs such as these whose local police resumed fingerprinting while § 2 was still in effect. A PI ordering the *Commissioner* to resume fingerprinting at DESPP similarly provides nothing to plaintiffs who claim only that they sought fingerprinting at their local police departments--not at DESPP.

Citing nothing in the record, the plaintiffs now argue that, had DESPP been taking fingerprints, they "might" have sought eligibility certificates from DESPP instead of seeking pistol permits from their local police departments. Appellees' Br. at 26. But the individual plaintiffs' declarations explicitly state that they sought pistol permits, and they say nothing about getting eligibility

13

certificates.  The unsupported, speculative assertion in plaintiffs' brief on appeal is insufficient to foreclose mootness.  See Fed. R. App. P. 28(a)(8)(A), (b) ("[Appellee's argument] must contain . . . citations to the . . . parts of the record on which the [appellee] relies."); Lore v. City of Syracuse, 670 F.3d 127, 171–72 (2d Cir. 2012) (declining to address a conclusory argument that did not comply with Fed. R. App. P. 28(a)); cf. City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 285 (2001) (concluding that "a live controversy is not maintained by speculation" that a party might in the future be prevented from conducting an activity that it "currently asserts no plan to [conduct]"); In re Kurtzman, 194 F.3d 54, 58 (2d Cir. 1999) (per curiam) (concluding that the "mere possibility" of "potential future injury" was "too speculative to avoid mootness" because it was "neither actual nor threatened at [the] time").

Therefore, the PI motion became moot when the police chiefs agreed to resume fingerprinting and the plaintiffs withdrew the PI motion as against them. Accordingly, the district court lost the power to grant these plaintiffs relief.

14

*ii. Voluntary Cessation*

Before the PI issued, the Governor represented that he would repeal EO 7E § 2 on June 15, 2020; and the Commissioner represented that DESPP would resume fingerprinting on that same date. The district court applied the "voluntary cessation" rule and concluded that, notwithstanding these representations, the controversy remained live because the court was not convinced that EO 7E § 2 would be repealed and fingerprinting would resume by that date, and because there was inadequate assurance that fingerprinting would not be suspended again in the future. Conn. Citizens Def. League, 465 F. Supp. 3d at 68–69.

The voluntary cessation rule is inapplicable here (even beside the point) because the *plaintiffs* mooted the PI motion when they withdrew it as against the police chiefs. The voluntary cessation rule applies when "a *defendant* voluntarily discontinues [the] challenged conduct." Am. Freedom Def. Initiative v. Metro. Transp. Auth., 815 F.3d 105, 109 (2d Cir. 2016) (per curiam) (emphasis added). In some such circumstances, "'dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed'"; in which

15

event "an injunction provides 'effectual relief' because it precludes the defendant from reviving the challenged conduct." Id. (quoting Knox, 567 U.S. at 307).

However, courts have no "license . . . to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest, *as when the parties have settled*." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 192 (2000) (emphasis added). The voluntary cessation rule ensures that a party cannot "evade judicial review, or . . . defeat a judgment, by temporarily altering questionable behavior." City News, 531 U.S. at 284 n.1. It therefore "does not aid" a plaintiff whose own "conduct saps the controversy of vitality, and [who] can gain nothing from . . . dismissal." Id.

Even if the voluntary cessation rule were applicable, it would not preclude mootness. "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 603 (2d Cir. 2016) (quoting Granite State Outdoor Advert., Inc. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002) (per curiam)). Although we generally review issues of

16

mootness de novo, we review for abuse of discretion whether it is reasonable to expect defendants' conduct to recur. See Irish Lesbian & Gay Org. v. Giuliani ("ILGO"), 143 F.3d 638, 647 n.3 (2d Cir. 1998).[5]

True, the PI would prevent the Governor from granting permission in the future to suspend fingerprinting. Here, for any harm to arise, the Governor would have to again empower municipal police departments to suspend fingerprinting, *and* those departments would have to invoke that power and implement a total suspension. Particularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics, a future total suspension of fingerprinting is speculative, even if permission to suspend were granted (which itself is a contingency). Accordingly, the decision that the voluntary cessation rule precluded mootness "cannot be located within the range of permissible decisions" and was therefore an abuse of discretion. Klipsch Grp., Inc. v. ePRO E-Com. Ltd., 880 F.3d 620, 627 (2d Cir. 2018) (quoting E.E.O.C. v. KarenKim, Inc., 698 F.3d 92, 99–100 (2d Cir. 2012)).

---

[5] We exercised de novo review to conclude that the decision to apply another exception to the mootness doctrine, whether conduct is "capable of repetition yet evading review," was itself an error. ILGO, 143 F.3d at 647–48.

## C. CCDL

CCDL lacked standing to pursue the PI.  Because CCDL brought this case under 42 U.S.C. § 1983, it lacked "standing to assert the rights of its members." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).[6]  An organization may nonetheless bring "a § 1983 suit on its *own* behalf so long as it can independently satisfy the requirements of Article III standing."  Id. (emphasis added).  The test is the same as that for individuals: in relevant part, CCDL must show "actual or threatened injury in fact."  ILGO, 143 F.3d at 649 (quoting Spann v. Colonial Vill., Inc., 899 F.2d 24, 27 (D.C. Cir. 1990)).

"[A]n organization's abstract concern with a subject that could be affected by an adjudication" is insufficient.  Ragin v. Harry Macklowe Real Est. Co., 6 F.3d 898, 905 (2d Cir. 1993) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 (1976)).  Rather, "an organization establishes an injury-in-fact if it can show that it was 'perceptibly impaired' by defendant's actions."  Centro de la

---

[6] To the extent that the district court viewed CCDL as asserting the rights of its members, it erred.  See Conn. Citizens Def. League, 465 F. Supp. 3d at 70 (considering "numerous localities" where CCDL members--who were not parties in this action--were prevented from applying for pistol permits).  Any injuries suffered by non-parties were of course not properly before the district court.  See Chafin v. Chafin, 568 U.S. 165, 172 (2013) ("Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them.'" (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990))).

Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 110 (2d Cir. 2017) (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)). Accordingly, "where an organization diverts its resources away from its current activities, it has suffered an injury [that is] independently sufficient to confer organizational standing." Id. at 111.

The district court ruled that CCDL enjoyed standing because it diverted resources in response to EO 7E and DESPP's fingerprinting suspension. CCDL's president, Holly Sullivan, asserted that she (1) communicated with individuals across Connecticut whose access to pistol permits was limited by EO 7E, and (2) sent a letter to the Governor--in an effort to avoid litigation--asking him to reinstate Connecticut's fingerprinting requirement.

However, CCDL fails to identify any "current activities" from which it diverted resources in order to pursue those efforts, and it therefore fails to show "that it was 'perceptibly impaired.'" Locust Valley, 868 F.3d at 110–11 (quoting Havens Realty Corp., 455 U.S. at 379). The steps that were taken by Sullivan were precisely CCDL's "current activities." Id. at 111. Sullivan averred that it was "part of [her] duties as president of CCDL" to communicate with affected individuals, and that one of her responsibilities is to "talk to people and

19

investigate reports from around the state to understand what issues are affecting people who are applying for [firearm licenses]." App. at 167 ¶¶ 5–6. Lobbying the Governor--and pursuing litigation--are integral to CCDL's "mission . . . to preserve the effectiveness of the Second Amendment through legislative and grassroots advocacy . . . [and] legal action . . . focused on the Constitutional right to keep and bear firearms." Id. at 168 ¶ 9. Sullivan's actions were not a departure from CCDL's usual activities.

Furthermore, CCDL lacked standing to pursue *injunctive* relief. "A plaintiff seeking injunctive . . . relief cannot rely on past injury . . . but must show a likelihood that [it] will be injured in the future." Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). The sole indication that CCDL might suffer future injury is Sullivan's statement that "CCDL has [expended and diverted] and continues[] to expend and divert its resources and has been and continues to be adversely and directly harmed by the Defendants' actions." App. at 168 ¶ 15. Such a conclusory assertion cannot support standing, see Baur v. Veneman, 352 F.3d 625, 636–37 (2d Cir. 2003), and falls short of establishing a "likelihood" of future injury, Deshawn E., 156 F.3d at 344.

## IV

Because the PI motion was moot with respect to the individual plaintiffs, and because CCDL lacked standing, the district court had no jurisdiction to issue the PI. Therefore, we vacate it. The Governor and Commissioner also argue that the decision to issue the PI was an abuse of discretion. Since we vacate the PI on grounds of mootness and standing, we decline to reach that argument.

## CONCLUSION

For the foregoing reasons, the PI is vacated.