**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATTHEW BRACH, an individual; JESSE PETRILLA, an individual; LACEE BEAULIEU, an individual; ERICA SEPHTON, an individual; KENNETH FLEMING, an individual; JOHN ZIEGLER, an individual; ALISON WALSH, an individual; ROGER HACKETT, an individual; CHRISTINE RUIZ, an individual; Z. R., a minor; ADE ONIBOKUN, an individual; BRIAN HAWKINS, an individual; TIFFANY MITROWKE, an individual; MARIANNA BEMA; ASHLEY RAMIREZ, an individual, *Plaintiffs-Appellants*, <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as the Governor of California; ROB BONTA, in his official capacity as the Attorney General of California; TOMAS ARAGON, in his official capacity as the State Public Health Officer and Department of Public Health Director; TONY THURMOND, in his official capacity as State | No. 20-56291 <br><br> D.C. No. 2:20-cv-06472-SVW-AFM <br><br><br> OPINION |

Superintendent of Public Instruction
and Director of Education,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted En Banc January 24, 2022
Pasadena, California

Filed June 15, 2022

Before:  Mary H. Murguia, Chief Judge, and M. Margaret
McKeown, Kim McLane Wardlaw, Ronald M. Gould,
Richard A. Paez, Marsha S. Berzon, Sandra S. Ikuta,
Jacqueline H. Nguyen, Paul J. Watford, Ryan D. Nelson,
and Daniel A. Bress, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Paez;
Dissent by Judge Berzon

# SUMMARY[*]

## Civil Rights

The en banc court dismissed as moot an appeal from the district court's summary judgment in favor of California Governor Newsom and state officials in an action brought by a group of parents and a student alleging defendants violated federal law when they ordered schools to suspend in-person instruction in 2020 and early 2021, at a time when California was taking its first steps of navigating the Covid-19 pandemic.

The en banc court held that this was a classic case in which, due to intervening events, there was no longer a live controversy necessary for Article III jurisdiction. Nor was there any effective relief that could be granted by the court. The parents had not brought a claim for damages; they sought a declaratory judgment that Governor Newsom's executive orders, to the extent they incorporated guidance on school reopening, were unconstitutional. Relatedly, they sought an injunction against the 2020-21 Reopening Framework. But Governor Newsom has rescinded the challenged executive orders, and the 2020-21 Reopening Framework has been revoked. Schools now operate under the 2021-22 Guidance, which declares that all schools may reopen for in-person learning. And the parents conceded that, since April 2021, there has been no "state-imposed barrier to reopening for in-person instruction." The actual controversy has evaporated. Bottom line: there was no

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

longer any state order for the court to declare unconstitutional or to enjoin.

The en banc court rejected plaintiffs' assertion that the case survived under two exceptions to mootness: the voluntary cessation exception and the capable of repetition yet evading review exception. Neither exception saved their case. The dramatic changes from the early days of the pandemic, including the lifting of all restrictions on in-person learning, fundamentally altered the character of this dispute. The en banc court joined the numerous other circuit courts across the country that have recently dismissed as moot similar challenges to early pandemic restrictions.

Dissenting, Judge Paez, joined by Judges Berzon, Ikuta, R. Nelson and Bress, stated that, mindful of the Supreme Court's clear directives to California on this issue and the fact that Governor Newsom's State of Emergency remains operative, he would hold that this case was not moot and affirm the district court on the merits. This case fit within the "capable of repetition, yet evading review" exception to mootness. The fact remained that the pandemic is not over. Governor Newsom has not relinquished his emergency powers, nor has the California Legislature stripped him of those powers. So long as Governor Newsom retains the specific power to impose similar restrictions, and the pandemic continues, Judge Paez would find this question "capable of repetition."

Because Judge Paez would not find this case moot, he briefly addressed the reasons why he would affirm the district court's grant of summary judgment to the State on the parents' substantive due process and equal protection claims. The parents had not demonstrated that distance learning failed to satisfy any basic educational standard.

Judge Paez further stated that the parents failed to plead their claim that the school closure orders violated their right to send their children to private school under *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925).  Judge Paez would therefore dismiss this portion of the appeal.

Dissenting, Judge Berzon joined Judge Paez's dissent in full.  In particular, Judge Berzon agreed that the merits of the question of whether parents of children who attend private schools (and only those parents) have a right to access an in-person education for their children was waived by the plaintiffs and was not properly before this court.  Because the majority of the three-judge panel nonetheless reached the issue and held that parents of children in private school have a substantive due process right to have their children attend in-person classes, including during a medical emergency, Judge Berzon wrote separately to dispel any suggestion that the waived issue could have possible merit were it to be raised in a later case.

## COUNSEL

Robert E. Dunn (argued), Eimer Stahl LLP, San Jose, California; Ryan J. Walsh, John K. Adams, and Amy C. Miller, Eimer Stahl LLP, Madison, Wisconsin; Harmeet K. Dhillon, Mark P. Meuser, and Michael Yoder, Dhillon Law Group Inc., San Francisco, California; for Plaintiffs-Appellants.

Samuel P. Siegel (argued) and Joshua A. Klein, Deputy Solicitors General; Jennifer Bunshoft and Darin L. Wessel, Deputy Attorneys General; Gregory Brown and Jennifer G. Perkell, Supervising Deputy Attorneys General; Cheryl L. Feiner, Senior Assistant Attorney General; Janill L. Richards, Principal Deputy Solicitor General; Michael J. Mongan, Solicitor General; Rob Bonta, Attorney General; Office of the Attorney General, San Francisco, California; for Defendants-Appellees.

James R. Williams, County Counsel; Douglas M. Press, Assistant County Counsel; Jason M. Bussey, Deputy County Counsel; Office of the County Counsel, County of Santa Clara, San Jose, California; for Amicus Curiae County of Santa Clara.

Nicholas R. Reaves, Daniel L. Chen, and Eric C. Rassbach, Becket Fund for Religious Liberty, Washington, D.C., for Amicus Curiae Becket Fund for Religious Liberty.

Gordon D. Todd, Erika L. Maley, and Cody L. Reaves, Sidley Austin LLP, Washington, D.C.; Michael H. Porrazzo, The Porrazzo Law Firm, Rancho Santa Margarita, California; for Amici Curiae Samuel A. Fryer Yavneh Hebrew Academy, Montebello Christian School, Gindi Maimonides Academy, and Saint Joseph Academy.

**OPINION**

McKEOWN, Circuit Judge:

Much has changed since the COVID-19 pandemic began.  One thing that has stayed the same is that federal courts may not rule on moot or hypothetical questions.  Here, a group of parents and one student ask us to pass judgment on whether California state officials violated federal law when they ordered schools to suspend in-person instruction in 2020 and early 2021, at a time when California was taking its first steps navigating the largest public health crisis since the Great Influenza Epidemic of 1918.

Fortunately, the situation in California has changed dramatically with the introduction of vaccines and other measures.  The State of California has rescinded its orders, students have been back in the classroom for a year, and the parties agree there is "currently no longer any state-imposed barrier to reopening for in-person instruction."  The parents urge us to decide this case anyway, suggesting that California might, maybe one day, close its schools again.  In effect, the parents seek an insurance policy that the schools will never ever close, even in the face of yet another unexpected emergency or contingency.  The law does not require California to meet that virtually unattainable goal; our jurisdiction is limited to live controversies and not speculative contingencies.  Joining the reasoning of the many other circuits that have recently considered challenges to early COVID-19 related restrictions, we conclude that the mere *possibility* that California might again suspend in-person instruction is too remote to save this case.  We dismiss the appeal as moot.

BACKGROUND

## A.  Factual Background

### 1.  The 2019–2020 School Year

In early March 2020, the World Health Organization declared a global pandemic in response to the novel coronavirus, SARS-CoV-2, responsible for the coronavirus disease 2019 ("COVID-19").  Then-President Donald Trump declared a national emergency and restricted international travel.  Governor Gavin Newsom declared a state of emergency within California, and issued Executive Order N-33-20, requiring Californians to "heed the current State public health directives" including the requirement "to stay home or at their place of residence."  Cal. Exec. Order N-33-20 (March 19, 2020).  As a result, many public-facing institutions and businesses were closed.  Schools closed their physical buildings, but students finished out the remaining few months of the school year with remote instruction.

### 2.  The 2020–2021 School Year

In advance of the new school year, in summer 2020, the California Department of Public Health announced its plans for reopening schools.  The "COVID-19 and Reopening In-Person Learning Framework for K-12 Schools in California, 2020–2021 School Year" ("2020–21 Reopening Framework") was developed "to support school communities" as they determined "when and how to implement in-person instruction."  Under the framework, schools were permitted to permanently reopen once the rate of COVID-19 transmission in their local areas stabilized.  Importantly, once a school reopened under the 2020–21 Reopening Framework, it was not required to close again, even if local COVID-19 rates later rose.  The 2020–21

Reopening Framework ratchetted in only one direction: toward reopening.[1]

Fourteen parents and one student (collectively "the parents") filed suit against Governor Newsom and other California officials just four days after the 2020–21 Reopening Framework was announced. They alleged that the State's decision to delay reopening schools until local conditions improved violated a "fundamental right to a basic, minimum education" located in the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and also violated various federal civil rights statutes.

By mid-December, the U.S. Food and Drug Administration authorized the first vaccine for the prevention of COVID-19. More vaccines were soon authorized, and doses of the vaccines were gradually made available to the public in late 2020 and early-to-mid 2021. Although not initially authorized for use by children, the vaccine is now available for those as young as five years old.

The introduction of vaccines and California's continued implementation of the 2020–21 Reopening Framework allowed an ever-increasing number of schools to reopen. By spring 2021, all of the parents' schools had been permitted to reopen. The parents acknowledged in an April 26, 2021,

---

[1] The 2020–21 Reopening Framework was refined at various points as to the benchmarks local areas were required to meet before schools were permitted to reopen. Virtually all of these changes (save one example) relaxed the relevant criteria, allowing schools to reopen sooner. Like the original 2020–21 Reopening Framework, each amended version of the framework made clear that no school would be required to close again after reopening.

court filing that there was "currently no longer any state-imposed barrier to reopening for in-person instruction."

### 3. The 2021–2022 School Year

California reached a significant benchmark during the 2021 summer holidays, when Governor Newsom announced that over 50% of Californians had received a full course of COVID-19 vaccination treatments. He issued Executive Order N-07-21, which formally rescinded the Executive Order issued at the outset of the pandemic. *See* Cal. Exec. Order N-07-21 (June 11, 2021) (rescinding Cal. Exec. Order N-33-20). As a result, "all restrictions on businesses and activities" derived from that earlier executive order were rescinded, including the State Public Health Officer's March 2020 stay-at-home order. *Id.*

The following month, the State issued updated guidance for the upcoming 2021–2022 school year. The "COVID-19 Public Health Guidance for K-12 Schools in California, 2021–22 School Year" ("2021–22 Guidance") imposes no restrictions on school reopening, recognizes that "[i]n-person schooling is critical to the mental and physical health and development of our students," and is "designed to keep California K-12 schools open for in-person instruction safely during the COVID-19 pandemic."[2]

## B. Procedural Background

The parents filed suit days after the 2020–21 Reopening Framework was announced. Proceedings moved swiftly

---

[2] Cal. Dep't of Pub. Health, COVID-19 Public Health Guidance for K-12 Schools in California, 2021–22 School Year (July 12, 2021), *as amended* April 6, 2022, https://www.cdph.ca.gov/Programs/CID/DCD C/Pages/COVID-19/K-12-Guidance-2021-22-School-Year.aspx.

before the district court, which denied the parents' motion for emergency injunctive relief on August 13, 2020, and granted summary judgment to the State on December 1, 2020. The parents timely appealed, and we granted their unopposed motion to expedite briefing and argument.

After this appeal was briefed, we asked the parties to provide supplemental briefing on whether this case was moot. The parents responded on April 26, 2021, informing the court that their children's schools had been permitted to reopen and there was "no longer any state-imposed barrier to reopening." They insisted, however, that the case remained live under certain exceptions to the mootness doctrine.

On July 12, 2021, the State issued the 2021–22 Guidance, lifting all restrictions on school reopening. Eleven days later, a divided panel of this court held that this case was not moot and reversed the district court in part. *See Brach v. Newsom*, 6 F.4th 904, 921, 934 (9th Cir.), *vacated*, 18 F.4th 1031 (9th Cir. 2021). Rejecting the State's claims of waiver, the panel accepted the parents' new argument on appeal that the Fourteenth Amendment's Due Process Clause guaranteed a fundamental right to in-person education. *See id.* at 917–32. So holding, the panel reversed the district court's ruling on the due process claim, remanded the equal protection claim for further consideration, and affirmed the district court's grant of summary judgment on the remaining claims. *See id.* at 934. We voted to rehear the case en banc. *Brach v. Newsom*, 18 F.4th 1031, 1032 (9th Cir. 2021).

## ANALYSIS

The threshold and ultimately only question we resolve is whether this case is moot. The parents filed suit in the early

throes of the pandemic. At the time, California was operating under the 2020–21 Reopening Framework, which allowed schools to permanently reopen once local COVID-19 transmission rates fell below a certain threshold. Unsatisfied with the delay, the parents asked the district court to order an immediate reopening. The district court rejected the request, but the reopening has happened anyway—California's schools have been operating in person for a year—meaning the parents have gotten everything they asked for.

This is a classic case in which, due to intervening events, there is no longer a live controversy necessary for Article III jurisdiction. Nor is there any effective relief that can be granted by the court. The parents have not brought a claim for damages; they sought a declaratory judgment that Governor Newsom's executive orders, to the extent they incorporated guidance on school reopening, were unconstitutional. Relatedly, they sought an injunction against the 2020–21 Reopening Framework, which they labeled the "State Order." But Governor Newsom has rescinded the challenged executive orders, and the 2020–21 Reopening Framework has been revoked. Schools now operate under the 2021–22 Guidance, which declares that all schools may reopen for in-person learning. And the parents concede that, since April 2021, there has been no "state-imposed barrier to reopening for in-person instruction." The actual controversy has evaporated. Bottom line: there is no longer any state order for the court to declare unconstitutional or to enjoin. It could not be clearer that this case is moot. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs'

particular legal rights.'" (quoting *Alvarez v. Smith*¸ 558 U.S. 87, 93 (2009))).

The parents nonetheless urge us to advise whether California's actions in the early days of the pandemic violated federal law, arguing their case survives under two exceptions to mootness: the voluntary cessation exception and the capable of repetition yet evading review exception. Neither exception saves their case. The dramatic changes from the early days of the pandemic, including the lifting of all restrictions on in-person learning, have fundamentally altered the character of this dispute. We join the numerous other circuit courts across the country that have recently dismissed as moot similar challenges to early pandemic restrictions.[3]

## A. The Voluntary Cessation Exception

The Supreme Court has long held that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. But this doctrine, which "traces to the principle that a party should not be able to evade judicial review, or to defeat a

---

[3] *See Eden, LLC v. Justice*, __ F.4th __, No. 21-1079, 2022 WL 1790282 (4th Cir. June 2, 2022) (concluding challenge to early pandemic COVID-19 restriction was moot in light of changed circumstances); *Resurrection Sch. v. Hertel*, __ F.4th __, No. 20-2256, 2022 WL 1656719 (6th Cir. May 25, 2022) (en banc) (same); *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162–66 (4th Cir. 2021) (same); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8–12 (1st Cir. 2021) (same); *County of Butler v. Governor of Pa.*, 8 F.4th 226, 230–31 (3rd Cir. 2021) (same), *cert. denied*, 142 S. Ct. 772 (2022); *Hawse v. Page*, 7 F.4th 685, 692–94 (8th Cir. 2021) (same); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021) (same). *But see Elim Romanian Pentecostal Church v. Pritzker*, 22 F.4th 701, 702 (7th Cir. 2022) (per curiam).

judgment, by temporarily altering questionable behavior," does not apply here. *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). The State did not abandon its policy after suit was filed in July 2020. Rather, the 2020–21 Reopening Framework, which was adopted before the litigation, automatically permitted schools to reopen permanently once their local areas achieved certain COVID-19 benchmarks. The State did not rescind its school closure orders in response to the litigation—the orders "expired by their own terms" after COVID-19 transmission rates declined and stabilized. *County of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021) (holding voluntary cessation exception did not apply where challenged COVID-19 restrictions "expired by their own terms" after "more than half of all adults in Pennsylvania were vaccinated"), *cert. denied*, 142 S. Ct. 772 (2022); *accord Spell v. Edwards*, 962 F.3d 175, 178–79 (5th Cir. 2020) (holding voluntary cessation exception did not apply where challenged COVID-19 stay-at-home orders "expired by their own terms").

Even assuming the voluntary cessation exception facially applies, it has no force here because the State has carried its burden of establishing that "the challenged behavior cannot reasonably be expected to recur." *Already*, 568 U.S. at 96. Although we hold the government to the same burden as private litigants in making this determination, *see Bell v. City of Boise*, 709 F.3d 890, 898–99 & n.13 (9th Cir. 2013), we nonetheless "treat the voluntary cessation of challenged conduct by government officials with more solicitude . . . than similar action by private parties," *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (omission in original) (internal quotation marks omitted). This is no bare deference: we probe the record to determine whether the government has met its burden, even as we grant

it a presumption of good faith. *See Rosebrock v. Mathis*, 745 F.3d 963, 971–72 (9th Cir. 2014) (identifying several factors for assessing claims of voluntary cessation by government actors).

California has presented a strong case that the current order opening schools is not a temporary move to sidestep the litigation. Most importantly, the State has "unequivocally renounce[d]" the use of school closure orders in the future. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019). The State has consistently worked to reopen schools and Governor Newsom has publicly "reaffirm[ed]" his "commitment to keeping California's schools open for safe, in-person learning."[4] That reaffirmance is no mere statement of aspiration. The 2020–21 Reopening Framework was rescinded and the 2021–22 Guidance is "designed to keep California K-12 schools open for in-person instruction safely during the COVID-19 pandemic." Cal. Dep't of Pub. Health, COVID-19 Public Health Guidance for K-12 Schools in California, *supra* note 2. Consistent with this commitment, no school has been forced to close again after reopening.

Further strengthening California's hand is the fact that its decision to reopen schools is "entrenched" and not "easily abandoned or altered in the future." *Fikre v. FBI*, 904 F.3d 1033, 1037–38 (9th Cir. 2018). Soon after the pandemic began, the California legislature passed an emergency statute

---

[4] Press Release, Off. of Governor Newsom, *Governor Gavin Newsom, Education Leaders Reaffirm Commitment to Keeping California's Schools Open for Safe, In-Person Learning* (Dec. 22, 2021), https://www.gov.ca.gov/2021/12/22/education-leaders-reaffirm-commit ment-to-keeping-californias-schools-open-for-safe-in-person-learning/ (capitalization removed).

allowing California's public school system to move online. Cal. Educ. Code § 43500 *et seq.* (repealed Jan. 1, 2022). Recognizing the extraordinary nature of the pandemic, but looking ahead, the legislature included a sunset provision so this law would automatically expire on June 30, 2021. *Id.* § 43511(b). The legislature also included a clause causing it to self-repeal on January 1, 2022. *Id.* Both of these dates have come and gone and there have been no efforts to reenact the emergency legislation, meaning that California's six million public school students will continue to be offered instruction in-person for the foreseeable future.[5] The "repeal of a statute relied upon to justify otherwise [allegedly] unlawful conduct may be analyzed as an event bearing on a prediction whether an attack on the conduct is moot." 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3533.6 (3d ed. 2008). Indeed, the legislature has declared its intent "that local educational agencies offer in-person instruction to the greatest extent possible" going forward, Cal. Educ. Code. § 43520, and has enacted financial penalties for schools that continue to operate remotely, *see id.* § 43521(c).[6]

Tellingly, California maintained in-person instruction throughout the surge of the Omicron COVID-19 variant,

---

[5] Although the legislature has taken steps to ensure that in-person education is the norm, it has also authorized schools to offer remote instruction to a limited number of students who do not yet wish to return to the classroom. *See* Cal. Educ. Code § 51745.

[6] The dissent dismisses the legislature's efforts to reopen schools as a "red herring." Dissent at 25 n.6. We disagree; the legislature's statutory enactments, policy statements, and structured financial incentives all serve to entrench the State's commitment to reopening schools.

even while the State's case count soared well past numbers reached early in the pandemic.  *See* Katherine Fung, *Despite Stricter COVID Restrictions, California's Schools Remained Open Amid Mass Closures*, Newsweek (Jan. 10, 2022), https://www.newsweek.com/despite-stricter-covid-restrictions-californias-schools-remained-open-amid-mass-closures-1667459.  It is thus apparent that, as in other jurisdictions, the "availability of vaccines and other measures to combat the virus have led to a significant change in the relevant circumstances." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162–64 (4th Cir. 2021) (holding voluntary cessation doctrine did not rescue otherwise moot challenge to early COVID-19 pandemic restriction); *see also County of Butler*, 8 F.4th at 231 (holding challenge to early COVID-19 pandemic restriction was moot in part because "the public health landscape has so fundamentally changed").

The parents candidly acknowledge that circumstances have changed since July 2020, when they filed their complaint, but suggest that an unexpected reversal in the public health situation could lead the Governor to once again close schools.  The dissent echoes this point, arguing this case is not moot so long as pandemic conditions might change and "Governor Newsom retains the specific power to impose similar restrictions."  Dissent at 26.  But this speculative contingency and the fact "the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot." *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021).  Reasonable expectation means something more than "a mere physical or theoretical possibility." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  We acknowledge that the Governor's continuing authority to close schools is a consideration in our analysis, *see Bit Labs*,

11 F.4th at 12, but it is by no means dispositive. As the D.C. Circuit has succinctly explained, "the mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged [policy] likely will be reenacted." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (citation omitted) (alterations in original).[7] It will always be true, in contexts beyond the present case, that unexpected events may prompt the government to adopt extraordinary measures. Given the State's assurances and the changed circumstances surrounding the pandemic, we conclude these fears are too "remote and speculative" to serve as a firm foundation for our jurisdiction. *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985).

The parents fall back on the Supreme Court's decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (per curiam), but the religious restrictions at issue there are hardly comparable. In *Diocese of Brooklyn*, religious organizations challenged New York's COVID-19 restrictions on in-person religious services. These restrictions were "regularly change[d]" by the State, often multiple times in the same week. *Id.* at 68 & n.3. Although

---

[7] The dissent bravely attempts to distinguish the flotilla of recent circuit decisions finding similar cases moot, *see supra* note 3 (collecting cases), by emphasizing that here the Governor's authority derives from the California Emergency Services Act ("CESA"), Cal. Gov't Code. § 8550 *et seq.*, which authorizes the Governor to assume additional powers upon declaring a state of emergency. We attach less weight to the Governor's continuing reliance on the CESA than our dissenting colleagues because the CESA can be invoked at any time without prior authorization or fact finding—even if the Governor renounced these powers today, he could assume them again tomorrow at the stroke of a pen.

the restrictions were temporarily lifted after the case reached the Supreme Court, the case was not moot because the plaintiffs lived under the "constant threat" that the restrictions would be reimposed. *Id.* at 68. By contrast, California's approach to school reopening has been steady and consistent, allowing schools to permanently reopen once their local areas achieved the specified benchmarks. No school has been required to close again after reopening. California officials have not "mov[ed] the goalpost." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (internal citation omitted). Rather, reopening schools has remained front and center from the beginning, in accord with California's consistent policy.

In sum, the State has carried its burden of establishing there is no reasonable expectation the challenged conduct will recur. California has renounced any intention of closing its schools again, the school closure orders were temporary measures designed to expire by their own terms, and the schools have been operating in-person for a year.

## B. The Capable of Repetition Yet Evading Review Exception

The capable of repetition yet evading review "exception is limited to extraordinary cases where '(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again.'" *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854–55 (9th Cir. 1999) (quoting *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992)).

Like the parties, we assume that the first condition has been satisfied. We nonetheless conclude that this exception to mootness does not apply because there is no "reasonable

expectation" that California will once again close the parents' schools. Our rationale for rejecting this exception mirrors much of our analysis regarding the voluntary cessation exception. *See Armster v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 806 F.2d 1347, 1360 n.20 (9th Cir. 1986) (noting that the voluntary cessation and the capable of repetition yet evading review exceptions are "analogous"). The challenged orders have long since been rescinded, the State is committed to keeping schools open, and the trajectory of the pandemic has been altered by the introduction of vaccines, including for children, medical evidence of the effect of vaccines, and expanded treatment options. The parents' argument that the pandemic *may* worsen and that the State *may* impose further restrictions is speculative. The test is "reasonable expectation," not ironclad assurance.

\* \* \*

This case is moot and no exception to mootness applies. We dismiss the appeal and remand with instructions for the district court to vacate its judgment and dismiss the complaint. *See Chambers*, 941 F.3d at 1200.

**DISMISSED AND REMANDED WITH INSTRUCTIONS.**

PAEZ, Circuit Judge, dissenting, with whom BERZON, IKUTA, R. NELSON, and BRESS, Circuit Judges, join:

The courthouse doors ought to stay open during a crisis. Mindful of the Supreme Court's clear directives to California on this issue and the fact that Governor Newsom's

State of Emergency remains operative, I would hold that this case is not moot and affirm the district court on the merits.

## I.

This case fits within the "capable of repetition, yet evading review" exception to mootness, which applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna,* 523 U.S. 1, 17 (1998)).

"Reasonable" in this context is not an exacting bar.[1]  The Supreme Court has indicated that it is somewhat *less* than probable:

> [W]e have found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable . . . Our concern in these cases . . . was whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not.

---

[1] As the majority notes, the parties agree that the first condition is satisfied.  This accords with the Supreme Court's holding that "a period of two years is too short to complete judicial review of the lawfulness" of an action.  *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (citing *S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 514–16 (1911)).

*Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original) (internal citations omitted).  It certainly does not require "repetition of every 'legally relevant' characteristic." *Wis. Right to Life*, 551 U.S. at 463.

The Supreme Court has repeatedly found pandemic restrictions capable of repetition.  In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Court found that a church's challenge to New York's pandemic restrictions was not moot where "[t]he Governor regularly change[d] the classification of particular areas without prior notice" and retained the authority to continue doing so.  141 S. Ct. 63, 68 (2020) (per curiam).  Though the Supreme Court did not identify which mootness exception applied, it cited to *Wisconsin Right to Life*'s discussion of the "capable of repetition, yet evading review" exception.  *Id.* (citing *Wis. Right to Life*, 551 U.S. at 462).  The Supreme Court applied *Roman Catholic Diocese* in *Tandon v. Newsom*, holding that a challenge to California's pandemic restrictions on religious gatherings was not moot because California officials "retain[ed] authority to reinstate" the challenged restrictions "at any time."  141 S. Ct. 1294, 1297 (2021) (per curiam) (citing *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 720 (2021) (Statement of Gorsuch, J.) (explaining that case was not moot because California officials have a record of "moving the goalposts")).

The majority points out that other circuits have recently found similar challenges to pandemic restrictions moot.[2]  A

---

[2] Some of these cases analyzed mootness under the voluntary cessation exception; because the majority cites these cases and because the following analysis focuses on the facts underlying those decisions— and on how the facts of California's pandemic restrictions differ—I discuss both.

closer look at those cases is instructive. The First Circuit has noted that one of the crucial factors in determining mootness in this scenario is whether the defendant retains the power to issue similar orders. Thus, the First Circuit found that a challenge to pandemic restrictions was not moot where Maine's governor retained the power to reimpose such restrictions. *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 157–58 (1st Cir. 2021). But it found a similar challenge moot when Massachusetts Governor Baker terminated a COVID-19 state of emergency, ending his authority to issue emergency orders. *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 7 (1st Cir. 2021). There, the First Circuit *specifically reasoned* that the lifting of the state of emergency, among other factors, warranted a different result: "[H]ere (unlike [in *Bayley's*]) the offending order is gone, along with the COVID-19 state of emergency." *Id.* at 11. That court also reasoned that *Roman Catholic Diocese* was not on point, because unlike in that case, "neither the challenged restriction nor the state of emergency is in effect." *Id.* (noting that this constituted a "night-and-day difference[]").

Other circuits have followed this logic. The Fourth Circuit found a pandemic restrictions challenge moot after "the state of emergency in Virginia upon which [the restrictions] were predicated ended. . . . With the termination of the state of emergency, the Governor's power to issue new executive orders involving COVID-19-related restrictions was extinguished." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 159, 163–64 (4th Cir. 2021). *See also County of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021), *cert. denied sub nom. Butler County, Pa. v. Wolf*, 142 S. Ct. 772 (2022) (holding that a challenge to pandemic restrictions was moot where health circumstances had changed *and* Pennsylvania Constitution had been amended to restrict Pennsylvania Governor's ability to enter

similar orders);[3] *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 344–45 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1753 (2021) (holding that a challenge to pandemic restrictions was not moot because the new executive order replacing the challenged restrictions included criteria for "replacing the current rules with older ones").[4]

True, not all circuits have considered this factor. In *Hawse v. Page*, the Eight Circuit held that a change in pandemic circumstances mooted a challenge to a county's pandemic restrictions, without discussing whether the county retained the authority to reimpose restrictions. 7 F.4th 685, 692–94 (8th Cir. 2021). *See also Resurrection Sch. v. Hertel*, No. 20-2256, 2022 WL 1656719, at \*1 (6th Cir. May 25, 2022) (en banc) (same); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (same).

California's Emergency Services Act, passed in 1970, empowers the California governor to proclaim a state of emergency in response to war, disease, natural disaster, or other "condition[] of disaster." Cal. Gov't Code §§ 8625, 8558. Pursuant to this authority, Governor Newsom first declared a state of emergency on March 4, 2020. Under this state of emergency, Governor Newsom ordered California residents to stay at home, carving out an exception for

---

[3] Plaintiffs in *County of Butler* evidently argued that the state retained the power to issue orders similar to those challenged despite the change in the state's constitution. 8 F.4th at 231. The Third Circuit does not explain how this argument comports with the changes to the Pennsylvania constitution.

[4] The Seventh Circuit later dismissed this case on other grounds. *Elim Romanian Pentecostal Church v. Pritzker*, 22 F.4th 701 (7th Cir. 2022).

"[w]orkers supporting public and private . . . K-12 schools . . . for the purposes of distance learning, provision of school meals, or care and supervision of minors to support essential workforce." And thus, schools closed. Governor Newsom has not terminated this state of emergency.[5]

Governor Newsom operated—and continues to operate—under this emergency order.[6] It is this exercise of power that the parents challenge. The majority takes some comfort from the fact that "[v]irtually all of [the Governor's] changes [to school reopening plans] (save one example) relaxed the relevant criteria" for reopening. That "one example" is instructive: under the power cited above, Governor Newsom has both loosened *and* tightened restrictions on school closures since this case was filed. As the district court explained, the State replaced its statewide monitoring list with a tier-based system on August 28, 2020. *Brach v. Newsom*, No. 2:20-CV-06472-SVW, 2020 WL 7222103, at \*1 (C.D. Cal. Dec. 1, 2020). The State placed counties on the monitoring list—where schools could not reopen—where case rates exceeded 100 per 100,000 people over fourteen days *or* that figure exceeded 25 cases *and* the test positivity rate was above 8%. The tier-based system

---

[5] Governor Newsom most recently extended the state of emergency on February 20, 2022. *See* Cal. Exec. Order N-5-22.

[6] The majority observes that the California legislature has allowed the law authorizing distance learning in California public schools to expire. This is a red herring. That statute did not become effective until June 29, 2020—long after Governor Newsom closed schools under his emergency powers. Cal. Educ. Code §§ 43500 *et seq.* (effective June 29, 2020 to December 31, 2021). Its expiration, therefore, does not strip Governor Newsom of that power. Rather, the majority's discussion of the statute highlights the fact that Governor Newsom has the power unilaterally to close schools.

placed counties in the most restrictive category—where schools could not reopen—when case rates exceeded 7 per 100,000 people per day *or* the test positivity rate exceeded 8%. Thus, a county with 20 cases per 100,000 people per week and a 9% test positivity rate would not have been on the earlier monitoring list, but would have been in Tier 1 under the later guidance. The emergency order grants Governor Newsom the power to act unilaterally in closing schools—power that he has used to both loosen and tighten restrictions since this lawsuit began.

Is this case moot? It does not fit neatly into the fact pattern of any of the cases decided thus far by the Supreme Court. However, I would side with the First, Third, Fourth, and Seventh Circuits—and follow the Supreme Court's guidance—and find that the Governor's continuing authority under his pandemic emergency order is a crucial factor in this analysis. I would hold that this case is not moot. The fact remains that the pandemic is not over. Governor Newsom has not relinquished his emergency powers, nor has the California Legislature stripped him of those powers. The majority errs in sidestepping this fact. So long as Governor Newsom retains the specific power to impose similar restrictions, and the pandemic continues, I would find this question "capable of repetition."[7]

---

[7] The majority contends that the continuation of the Governor's emergency order carries little weight because it "can be invoked at any time without prior authorization or fact finding—even if the Governor renounced these powers today, he could assume them again tomorrow at the stroke of a pen." I agree that the theoretical ability to declare a state of emergency that grants an official the power to issue similar restrictions would not necessarily rescue an otherwise moot case. *But see Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc) (a challenge to repealed, amended, or expired

A brief discussion of the first prong of this test—the duration of the challenged action—underscores this point. Both parties agree that the challenged restrictions were brief enough to evade review. Their duration, therefore, supports the parents' argument. And yet the majority cites the fact that the restrictions no longer impact the parents as proof that this case *is* moot! In its brief discussion of the "capable of repetition, yet evading review" exception, the majority hangs its hat on the fact that "[t]he challenged orders have long since been rescinded." And so they have—which is exactly why this case evades review. To suggest that this is not capable of repetition, yet evading review *because* the orders have already expired subverts the purpose of this doctrine.[8]

---

legislation is moot unless "there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it."). I would draw the line in this case at the continuation of *this* emergency order—especially because that action differs from those of officials in other states.

[8] Amici take this flawed line of reasoning further. Santa Clara County argues that "if the State were to again bar in-person instruction, it would do so in response to materially different conditions . . . Thus, in the unlikely event that the State does reimpose distance learning, those rules would give rise to a new controversy." First, we cannot disregard the Supreme Court's holding that the "capable of repetition" prong does not require "repetition of every 'legally relevant' characteristic." *Wis. Right to Life*, 551 U.S. at 463. Additionally, Santa Clara County reminds us that this issue is "capable of repetition" because Governor Newsom retains the power to close schools. And further, forcing the parents to bring a new lawsuit every time Governor Newsom exercises that authority to close schools—closures that are, as demonstrated, too brief to be fully litigated—guarantees that this issue will evade review. It is the exact scenario that the "capable of repetition, yet evading review" doctrine was crafted to avoid.

The majority accuses the parents of seeking "an insurance policy that the schools will never ever close, even in the face of yet another unexpected emergency or contingency." This exaggerates the parents' claim. I read the parents as seeking judicial review of the contours of the Governor's authority under *this* unprecedented expansion of executive power. Were that power to end, this case would be moot. As it has not, I would hold that the parents' claims are not moot.[9]

## II.

Because I would find that this case is not moot, I would consider the merits of the parents' claims. I briefly sketch the reasons I would affirm the district court.

The parents have not demonstrated that distance learning fails to satisfy any basic educational standard. For this reason, I would affirm the district court's grant of summary judgment to the State on the parents' substantive due process claim.

Substantive due process forbids the government from infringing on "fundamental" liberty interests. *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). The Supreme Court has, so far, declined to recognize a substantive due process

---

[9] For essentially the same reasons that this case is capable of repetition yet evading review, the voluntary cessation doctrine also applies. Under that "stringent" doctrine, the state has the "heavy burden" to show that it is "absolutely clear that [its] allegedly wrongful behavior could not reasonably be expected to recur." *Native Village of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1215 (9th Cir. 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). For the reasons I have already explained, the state has not met this burden.

right to a basic minimum education. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution."); *Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution.") (citing *Rodriguez*, 411 U.S. at 35); *Papasan v. Allain*, 478 U.S. 265, 285 (1986) ("As *Rodriguez* and *Plyler* indicate, this Court has not yet definitively settled the questions whether a minimally adequate education is a fundamental right. . .")).

I would leave for another day the question of whether there exists any constitutional right to a basic minimum education and follow the district court's alternate reasoning that the parents presented neither a "standard for evaluating what should count as a minimally adequate education" nor sufficient record evidence to show that their children are not being educated.[10]  Absent a workable standard or a much more substantial record, I would affirm the district court's grant of summary judgment to the State on this claim.[11]

---

[10] The parents argue that their students experienced technology hurdles, inferior Zoom lessons, and difficulty returning assignments on time, and were denied standardized testing to measure their progress, grades to improve their GPAs, and extracurricular activities to bolster their college applications.  Caselaw does not establish that these are constitutionally-required educational components, nor are the parents' declarations sufficiently detailed to establish that the students, as a whole, could not access any minimally adequate education whatsoever.

[11] I do not discount the very real hardship students with disabilities faced when attempting distance learning.  Plaintiff Christine Ruiz's autistic sons were partially or fully unable to participate in their Zoom classroom meetings and did not receive support services that they require.  Plaintiff Ashley Ramirez's autistic son "cannot tolerate distance learning" and "basically shut down."  And Plaintiff Brian Hawkins's son

### III.

I would affirm the district court's grant of summary judgment to the State on the parents' equal protection claim. As explained above, I would not reach the question of whether there exists a fundamental constitutional right to a basic minimum education, because in any event, the parents here have not shown that their children are being deprived of a minimally adequate education. Thus, no fundamental right was implicated. When an equal protection claim does not implicate a "fundamental" right or discriminate against a suspect class,[12] "it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988). The Supreme Court has held that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 67. Because the school-closure order was rationally related to this purpose when enacted, I would hold that it survives the parents' equal protection attack.

---

with ADHD was not provided with the support services he requires. But the parents abandoned their statutory claims on behalf of disabled students on appeal, choosing instead to devote space to the claims of private school students.

[12] Classifications based on the prevalence of COVID, or on the type of educational provider (e.g., public schools vs. summer camps), do not implicate suspect classes. *Cf. Rodriguez*, 411 U.S. at 28 (noting that a class lacks the "traditional indicia" of being a suspect class if "the class is not saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process").

IV.

The parents' opening brief before us asserts that the school closure orders violate the parents' right to send their children to private school under *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925). The State asserts that this argument is waived. In response, the parents contend that their district court briefing preserves a *Meyer-Pierce* argument, and that, in any case, we may exercise our discretion to consider this argument on appeal.

Not so. The parents did not merely fail to raise this argument; they failed to *plead* this *claim*. Their complaint only asserts that the State has violated students' "fundamental right to receive a basic minimum education." While we may consider *arguments* not raised before the district court, *see AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213 (9th Cir. 2020), the parents offer no authority—and I could not find any—to support the idea that we have discretion to consider *claims* not pled in the complaint.

Examining the *Meyer-Pierce* right shows that the parents did not allege a *Meyer-Pierce* claim. *Meyer* struck down a state law barring the teaching of any language other than English to children younger than the ninth grade. 262 U.S. at 397, 400–01. The Supreme Court held that that the Fourteenth Amendment protected as a liberty interest the teacher's "right thus to teach and the right of parents to engage him so to instruct their children." *Id.* *Pierce* struck down Oregon's compulsory public education law. 268 U.S. at 534–35. The Supreme Court determined that under *Meyer*, the law "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control" because the liberty interest protected by the Fourteenth Amendment "excludes any

general power of the state to standardize its children by forcing them to accept instruction from public teachers only." *Id.*

As the above holdings demonstrate, the *Meyer-Pierce* right is a right asserted *by parents*. *See also, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972) (describing *Pierce* as "a charter of the rights of parents"); *cf. Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (noting in passing that "children's rights to receive teaching in languages other than the nation's common tongue were guarded [in *Meyer*] against the state's encroachment"). On the other hand, the right to a "basic, minimum education" is a right asserted by *children*, or by parents *on behalf of children*. *Plyler*, 457 U.S. at 221 ("Public education is not a 'right' granted *to individuals* by the Constitution") (emphasis added) (citing *San Antonio Indep. Sch. Dist.*, 411 U.S. at 35). While the Supreme Court has found that parents have standing to challenge the education their children receive, it has never formulated this as a *parental* right to a certain education. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (stating that parents who challenged Seattle's race-based school admissions scheme asserted injury "on behalf of their children").

The complaint does not allege any violation of a *parental* right. And in their briefing before the district court, the parents repeatedly disavowed any parental-rights claim. In their supplemental briefing on standing ordered by that court, the parents argued that they could assert claims "on behalf of their children." In their summary judgment briefing, the parents summarized their argument, in its entirety, as follows: "Because Plaintiffs have presented overwhelming evidence showing that the orders violate *their children's constitutional and statutory rights*, the Court

should decline to grant summary judgment to Defendants . . ." In the same brief, the parents summarized their aim as "seek[ing] to vindicate their children's constitutional rights to due process and equal protection," "by contrast" to caselaw in which a parent sought to "vindicate *her own* asserted interest" in the child's education. The parents could not have been more clear: they did not bring this case to vindicate parental rights. And because the *Meyer-Pierce* right is a parental right, not a right asserted by a child or a parent on behalf of a child, I would find that the parents failed to raise a *Meyer-Pierce* claim and dismiss this portion of the appeal.

Underscoring this conclusion is the fact that in the district court the parents did not distinguish between the due process rights of public school and private school children, but rather treated them collectively. That is, they alleged the violation of an alleged due process right to a basic minimum education that applied to all students, whether in public or private school. Tellingly, when the parents cited the *Meyer-Pierce* line of cases in their district court briefing, they did so only in passing. Indeed, at one point the parents specifically stated that "Defendants mischaracterize Plaintiffs as advocating for a 'fundamental right to in-person school.' Plaintiffs' actual argument is that 'the Fourteenth Amendment of the United States Constitution [] protects Californians' fundamental right to a basic minimum education,' and that the Order infringes that right because distance learning has proved woefully inadequate." Under all these circumstances, Plaintiffs clearly did not preserve a separate claim under *Meyer* and *Pierce*.

IV.

Because I would hold that this case is not moot and affirm the district court on the merits, I respectfully dissent.

---

BERZON, Circuit Judge, dissenting:

I join Judge Paez's dissent in full.  In particular, I agree that the merits of the question whether parents of children who attend private schools (and only those parents) have a right to access an in-person education for their children was waived by the Plaintiffs and is not properly before this Court. Paez Dissent at 31–33.

The majority of the three-judge panel nonetheless reached the issue and, relying principally on *Meyer v. Nebraska*, 262 U.S. 390 (1923), and *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), held that parents of children in private school have a substantive due process right to have their children attend in-person classes, including during a medical emergency.  *See Brach v. Newsom*, 6 F.4th 904, 927–33 (9th Cir. 2021), *vacated*, 18 F.4th 1031 (9th Cir. 2021).  I write separately to dispel any suggestion that the waived issue could have possible merit were it to be raised in a later case.

*Meyer* struck down a Nebraska statute forbidding the teaching of any language other than English before ninth grade as violating the right of a German language instructor "to teach and the right of parents to engage him so to instruct their children."  262 U.S. at 396–97, 400, 403.  By completely prohibiting a substantive topic of instruction— foreign languages—the statute "interfere[d] with the calling of modern language teachers, with the opportunities of

pupils to acquire knowledge, and with the power of parents to control the education of their own." *Id.* at 401. Two years later, *Pierce* struck down an Oregon law requiring parents to send their children to public schools. 268 U.S. at 529–31. The Court held that the statute "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control," reasoning that the law's "inevitable practical result . . . would be destruction of appellees' primary schools, and perhaps all other private primary schools" in the state and that the state did not have the power "to standardize its children by forcing them to accept instruction from public teachers only." *Id.* at 534–35.

The holdings of *Meyer* and *Pierce* were limited to protecting two rights: the right of parents to choose private rather than public school and the right of those private schools to teach subject matter above and beyond whatever basic curriculum the state may prescribe. To that degree, parents have the right "to control the education of their own," *Meyer*, 262 U.S. at 401, and "to direct the upbringing and education" of their children, *Pierce*, 268 U.S. at 534–35. But the two cases' limited holdings had nothing to do with the state's power otherwise to regulate the conditions under which schools provide that knowledge, let alone the state's power to enforce generally applicable public health laws.

To the contrary, *Meyer* and *Pierce* explicitly preserved the state's broad powers to adopt regulations concerning school attendance and "the public welfare." *Pierce*, 268 U.S. at 534. *Meyer* reserved the "power of the state to compel attendance at some school and to make *reasonable* regulations for *all* schools, including a requirement that they shall give instructions in English." 262 U.S. at 402 (emphasis added). Likewise, *Pierce* emphasized that states

retained the power "*reasonably* to regulate all schools," including "to inspect, supervise and examine them" and "to require that all children of proper age attend some school." 268 U.S. at 534 (emphasis added).

Since *Meyer* and *Pierce*, the Supreme Court has repeatedly confirmed this limited understanding of the *Meyer-Pierce* right. *Wisconsin v. Yoder*, 406 U.S. 205 (1972), reaffirmed "the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education," *id.* at 213. Likewise, *Norwood v. Harrison*, 413 U.S. 455 (1973), stressed "the limited scope of *Pierce*," which "held simply that while a State may posit [educational] standards, it may not pre-empt the educational process by requiring children to attend public schools," *id.* at 461 (quoting *Yoder*, 406 U.S. at 239 (White, J., concurring)). And *Runyon v. McCrary*, 427 U.S. 160 (1976), emphasized that "*Meyer* and its progeny" protected only the private "schools' right to operate," "the right of parents to send their children to a particular private school rather than a public school," and the right to direct (at least to some degree) "the subject matter which is taught at any private school," *id.* at 177. Echoing *Meyer* and *Pierce*, *Runyon* observed that the "Court has repeatedly stressed that while parents have a constitutional right to send their children to private schools and a constitutional right to select private schools that offer specialized instruction, they have no constitutional right to provide their children with private school education unfettered by reasonable government regulation." *Id.* at 178.

California's suspension of in-person education during the COVID-19 pandemic falls well outside this "limited scope" of the *Meyer-Pierce* right. *Id.* at 177. Consistent

with *Pierce*, California's public health measures permitted private schools to continue "to exist and to operate," *Norwood*, 413 U.S. at 462, and in no way caused the "destruction" of private education, *Pierce*, 268 U.S. at 534. Nor did California's actions affect *what* private schools may teach; those schools have remained "free to inculcate whatever values and standards they deem desirable." *Runyon*, 427 U.S. at 177.

That states enjoy wide latitude to safeguard public health and welfare is underscored by the Supreme Court's decision in *Prince v. Massachusetts*, 321 U.S. 158 (1944). *Prince* concerned a challenge to a Massachusetts law restricting child labor brought by a Jehovah's Witness who had assigned her niece, over whom she had legal custody, to sell religious literature on the street. *Id.* at 159–63. The girl's guardian asserted, along with a First Amendment free exercise right, "a claim of parental right as secured by the due process clause of the" Fourteenth Amendment. *Id.* at 164 (citing *Meyer*, 262 U.S. 390). Although *Prince* recognized both "the parent's authority to provide religious" education, *id.* at 166 (citing *Pierce*, 268 U.S. 510), and that "the custody, care and nurture of the child reside first in the parents," *id.*, the Court explained that "the family itself is not beyond regulation in the public interest," *id.* Accordingly, *Prince* observed that "the state as *parens patriae* may restrict the parent's control" "to guard the general interest in youth's well being" and that the parental rights recognized in *Meyer* and *Pierce* did "not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Id.* at 166–67. And the Court endorsed the state's "wide range of power for limiting parental freedom and authority in things affecting the child's welfare." *Id.* at 167; *see also Yoder*, 406 U.S. at 230 (recognizing the state's power to regulate to prevent "harm to the physical or mental

health of the child or to the public safety, peace, order, or welfare"). California's school closures during a once-in-a-century pandemic fall well within that "wide range of power" to protect public health.

Additionally, that technology has only recently enabled distance learning does not prove that there is a constitutionally protected right to in-person instruction, as the panel opinion posited. *Brach*, 6 F.4th at 929. In this regard, the panel opinion's reliance on "historical practice and tradition," *id.*, makes little sense in light of its simultaneous *rejection* of any parental right to in-person education for public school students. To be sure, our cases recognize that, once parents have chosen public school, "they do not have a fundamental right generally to direct *how* a public school teaches their child." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005) (quoting *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005)). But the panel opinion did not contend (nor could it) that the historical fact of in-person instruction applied only to private schools. It would therefore be strange to conclude, as the panel opinion did, that students attending public schools have no fundamental right to education *at all*, *Brach*, 6 F.4th at 922–24, yet historical practice dictates that students attending private schools have a fundamental, substantive-due-process based right to *in-person* education, in particular.

In short, even if Plaintiffs had brought a *Meyer-Pierce* claim in this case, which Judge Paez's dissent explains they did not do, Paez Dissent at 31–33, I would conclude that California's school closures challenged here did not violate the important but limited fundamental rights protected by those cases.