Filed 11/21/23  Campos v. Bonta CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MAURO CAMPOS et al., | D081134 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2020-00030178-CU-MC-CTL) |
| ROB BONTA, as Attorney General, etc. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Reversed and remanded with directions.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Mark Beckington, and Megan A.S. Richards, Deputy Attorneys General, for Defendants and Appellants.

Benbrook Law Group, Bradley A. Benbrook and Stephen M. Duvernay, for Plaintiffs and Respondents.

The California Department of Justice, the Attorney General of California, and the Director of the Bureau of Firearms (collectively, the Department) appeal from the trial court's judgment granting a writ petition

brought by Mauro Campos and other individuals and organizations (collectively, Campos). In the petition, Campos claimed that the Department used the COVID-19 pandemic as an opportunity to undermine and restrict access to firearms by delaying purchases beyond what was authorized by law. The petition sought to require the Department to complete all background checks on applications to purchase a firearm within the 10-day waiting period described in Penal Code[1] sections 26815 and 27540, unless there is a statutory basis for the delay. (§ 28220, subd. (f)(1)(A).) In granting the petition, the trial court directed the Department to cease its purported policy and practice of delaying firearm transactions.

In its appeal, the Department argues that the petition should have been dismissed as moot because the delays occurred for only three months in 2020 due to a confluence of extraordinary events at the beginning of the pandemic, and there were no further delays in firearms transactions by the time Campos filed the petition. The Department also contends we should not exercise our discretion to decide the moot issue because these unusual events are unlikely to recur. We agree that the petition was already moot when filed, and that the circumstances here do not warrant invoking any discretionary exception to the mootness doctrine. Accordingly, we reverse the court's judgment and remand with directions to dismiss the petition as moot.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Firearms Background Check*

1.     *Application and Automated Initial Review*

California imposes a 10-day waiting period on most firearm purchases so that the Department can conduct a background check and notify dealers if the prospective buyer is prohibited from purchasing a firearm.  (§§ 26815, subd. (a), 27540, subd. (a).)  Dealers use a computerized verification system to submit firearm applications to the Department.  Upon submission, the Department "examine[s] its records, as well as those records that it is authorized to request" to determine whether the buyer purchased a firearm in the previous 30 days or is otherwise prohibited from possessing a firearm. (§ 28220, subd. (a).)  Throughout the review, the Department communicates with dealers through the computerized verification system. (See Cal. Code Regs., tit. 11, § 4230, subd. (b).)

The Department's process for completing the background check starts with an automated screening, in which the computerized verification system compares the applicant's information against Department of Motor Vehicle records and sends inquiries to various state and federal electronic databases based on the applicant's name and date of birth.  (See *Silvester v. Harris* (9th Cir. 2016) 843 F.3d 816, 825 [describing the process].)  The computerized system compiles matching database entries for further review.   The application is approved automatically if there are no matches or no disqualifying information.  (*Ibid.*)  About 14 percent of all applications are approved automatically.

2.     *Manual Review by an Analyst*

Applications that are not approved automatically are reviewed manually by an analyst.  An analyst reviews database entries and approves

the application if the records indicate the applicant is not prohibited from purchasing a firearm. Conversely, the analyst denies the application if the records indicate the applicant is prohibited from purchasing a firearm and no further research is needed.

### 3. *Additional Time to Review Some Applications*

Occasionally, the Department is unable to determine a person's eligibility during the 10-day waiting period. (See § 28220, subd. (f).) For example, there could be partial information in the record that makes it difficult to determine whether the buyer has a disqualifying mental health hold or criminal conviction. (*Ibid.*) The Department has up to 30 days to conduct additional investigation in the following situations:

> (i)  The purchaser has been taken into custody and placed in a facility for mental health treatment or evaluation and may be a person described in [the statute] and the [D]epartment is unable to ascertain whether the purchaser is a person who is prohibited from possessing, receiving, owning, or purchasing a firearm, pursuant to [the statute], prior to the conclusion of the waiting period . . . .
>
> (ii)  The purchaser has been arrested for, or charged with, a crime that would make [him or her], if convicted, a person who is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, and the [D]epartment is unable to ascertain whether the purchaser was convicted of that offense prior to the conclusion of the waiting period . . . .
>
> (iii)  The purchaser may be a person [who has purchased a handgun in the prior 30-day period], and the [D]epartment is unable to ascertain whether the purchaser, in fact, is a person [who has purchased a handgun in the prior 30-day period], prior to the conclusion of the waiting period . . . .

(§ 28220, subd. (f)(1)(A).)

4

In these instances, analysts may need to investigate the disposition of a criminal arrest or review mental health records to determine whether the purchaser is eligible to own and possess a firearm.  (See *Silvester v. Harris*, 41 F.Supp.3d 927, 951–952.)  They may contact listed reporting agencies, such as courts, police departments, hospitals, and military tribunals, for disposition information regarding noted arrests and mental health holds.  If the Department is unable to determine the "final disposition of the arrest or criminal charge, or the outcome of the mental health treatment or evaluation, or the purchaser's eligibility to purchase a firearm" within 30 days from the date of purchase, it must "immediately notify" the dealer that it can transfer the firearm.  (§ 28220(f)(4).)

B.    *The Department Temporarily Failed to Complete Timely Background Checks at the Beginning of the COVID-19 Pandemic*

1.    *The Department Faced Increased Firearms Sales and Office Closures During the Pandemic*

There were about 2,000 firearms sales per day at the beginning of 2020, which was relatively low compared to the previous year.  Sales increased dramatically by the middle of March, however, as the COVID-19 pandemic got underway.  On March 17, 18, and 19, for example, the Department received over 9,000 applications per day.  For the entire month of March 2020, the Department received approximately 140,000 applications, compared to 85,000 in March 2019.  Sales were up through the rest of 2020.

Additionally, in early June 2020, analysts could not process applications because some of the Department's offices were closed due to social unrest.   At the same time, the Department again received unusually high volumes of applications.  For example, on the first two days of June, the Department received 4,685 applications and 6,683 applications respectively.

2.    *The Department Temporarily Failed to Process Applications Within the 10-Day Waiting Period*

During the early months of the pandemic, the Department's staffing and ability to conduct background checks efficiently were hindered by illness, quarantines, shutdown orders, school closures and employees taking leaves of absence.   To counteract staffing issues, the Department redirected staff from other units within the Department and instituted a combination of voluntary and mandatory overtime, flexible schedules, and alternative schedules.  It also expedited ongoing hiring efforts to increase the staff available to process applications.

While making these adjustments, the Department continued to process background checks every day of the pandemic (apart from when its offices were closed in early June).  Even so, background checks took longer because other entities, including the courts and law enforcement agencies, were slower to respond to requests for information.  Facing the large increase in applications, pandemic-related operational and staffing difficulties, and office closures, the Department took longer than 10 days to complete the manual review of many applications.

Meanwhile, the Department posted on its website a notice to dealers and firearms purchasers that the pandemic could lead background checks to take longer than 10 days but that it would continue to strive to complete checks as quickly as possible:

> "Under Penal Code section 28220(f)(4), the Department . . . has up to 30 days to complete background checks on firearms purchasers. Prior to the COVID-19 pandemic, [the Department] typically completed these checks within [the statute's] 10-day waiting period. COVID-19 protective measures have impacted the ability to increase the personnel resources in [the Department] to address the recent sustained increase in firearms and

6

ammunition transactions without compromising the health and safety of our employees and the community. As a result, firearms and ammunition dealers and purchasers should know that as [Department] employees continue to perform the statutorily required background checks throughout the COVID-19 pandemic, circumstances may compel that background checks are completed after the expiration of the 10-day waiting period for firearms purchases. [The Department] will continue to strive to provide the best service and complete these checks in the shortest time possible."

In March 2020, despite the challenges posed by the pandemic, the Department processed more than 103,000 applications, whereas the previous March it processed only 69,000 applications. Throughout 2020, the Department processed significantly more and, in some months, processed twice as many applications as the prior year. In July 2020, for example, the Department processed more than 109,000 applications, whereas it processed just over 51,000 applications in July 2019.

In total, during the first several months of the pandemic, the Department processed more than 670,000 applications with approximately one-third of those taking longer than 10 days to process. The first day that the Department had applications waiting longer than 10 days to be processed was April 4, 2020. By July 7, 2020, the Department was again processing all applications within the 10-day waiting period. During this time, the Department took an average of 12.945 days to process each application and did not take longer than 18 days to process any application.

C.    *Campos's Petition*

In August 2020, Campos filed a verified petition for writ of mandate and complaint for declaratory relief claiming that the Department had used the "pandemic as an opportunity to undermine and restrict citizens' access to firearms" in violation of California law.  Campos alleged that the state's statutory scheme allows the Department to delay a firearm sale "*only* if a background check conducted within the initial 10-day window affirmatively shows that the purchaser might be prohibited" from possessing a firearm for one of the three reasons given in the statute.

Campos sought a writ of mandate compelling the Department to approve applications that cannot be processed within California's 10-day waiting period (unless they presented one of the situations in which the statute allows more time to perform research).  Additionally, for approvals that were delayed up to 30 days for additional research, Campos wanted the Department to immediately notify the dealer and purchaser about the delay.  Campos also asked for declaratory relief that the Department may not delay firearm sales beyond the initial 10-day waiting period except in the circumstances set forth in section 28220, subdivision (f)(1)(A).

D.    *Hearing on the Petition*

For the July 2022 hearing, Campos presented the Department's statement on its website regarding delays caused by the pandemic.  Campos argued that the Department claimed that the statute "gives it the authority to delay a firearm transaction up to 30 days for any reason (or no reason at all)."  Campos also presented data describing the number of background checks from March to August 2020 that took longer than 10 days.

The Department presented evidence that it had completed significantly more background checks from March to August 2020, and that temporary

delays in processing applications were due to the pandemic and social disturbances. Even though the Department redirected personnel to help process applications, encouraged overtime, instituted flexible work schedules, and expedited ongoing hiring efforts, the volume of applications still exceeded the Department's ability to process them timely for the first few months of the pandemic. By July 2020, however, the Department had resolved the backlog. The Department has not exceeded the 10-day waiting period again since the three-month period in March to July 2020.

The Department argued that the writ should be denied as moot because there was no ongoing delay in processing applications by the time Campos filed the petition. Additionally, it argued that it had not abused its discretion in continuing to perform background checks after the waiting period and that it did not have a policy of delaying background checks beyond the waiting period. To the extent the statute set a time limit, the Department argued that the pandemic created an emergency situation that provided an implied exception. It also argued that the clear purpose of the statute would have been defeated if applications were approved without a background check.

The Department warned that the writ would compel the Department, in another "unpredictable situation," to approve sales to individuals who might be prohibited from obtaining a firearm.

E.    *The Trial Court's Judgment*

The trial court found that the matter was not moot because the Department "ha[d] not rescinded the challenged policy" and purportedly continued to assert that the statute "provides up to 30 days to complete firearm background checks for any reason."  The court also found that "the challenged policy remained publicly posted" and was "live on the [Department's] website."  The Court determined that the "statutory and regulatory scheme" demonstrates the background check is "based on a 10-day waiting period."  The court held that the statute allows delay only for the three specified reasons:  "Had the Legislature wished to create a broader allowance for a 30-day delay whenever the DOJ determined additional time is needed, it could have done so. It did not."

The court declined to find an "implied exception" for the emergency situation.  The court explained that the Department did not argue that it was "required to comply with the 10-day period" except for the statute's "three enumerated circumstances," and yet was unable to do so because of the "impossible circumstances created by the pandemic."  Instead, the Department's position was that it was allowed "to wait more than 10 days to conduct the background checks" when it determined "more time is needed," and that it complied with the statute as much as possible "under the circumstances."  In concluding that the Department had failed to show the applicability of "the implied exception for noncompliance based on impossibility," the court suggested that the Department could avoid approving applications without a background check by seeking an emergency order from the Governor.

The court granted the petition and ordered the Department to cease its unlawful "policy and practice of delaying firearm transactions beyond the

10

conclusion of the waiting period" without "a statutory basis to delay the transaction." If the Department could not "determine a purchaser's eligibility to purchase a firearm" after the waiting period, it must "allow delivery of the firearm, except where" it is complying with the statute. The court retained jurisdiction as necessary to enforce the judgment and the writ of mandate.

DISCUSSION

The Department argues that because the uncontested facts demonstrate the temporary delays in conducting background checks for three months in 2020 were due to the pandemic and other unique factors, and are no longer occurring, the court erred in refusing to dismiss the petition as moot. We agree.

A.    *Standard of Review*

We review rulings on mootness de novo. (See *Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 319 ["Issues of justiciability, such as mootness, are generally reviewed de novo."]; see also *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174 ["Trial court rulings on mootness are reviewed de novo where, as here, they are decided on undisputed facts."]; *Biodiversity Legal Foundation v. Badgley* (9th Cir. 2002) 309 F.3d 1166, 1173 [appellate courts "review mootness, a question of law, de novo"].) To the extent the trial court made factual findings, however, we review them for substantial evidence. (*Boccato v. City of Hermosa Beach* (1984) 158 Cal.App.3d 804, 808.)

11

B.     *The Issue Was Moot Before Campos Filed the Petition*

1.     *The Department Resumed Timely Background Checks in July 2020*

It is undisputed that, by early July 2020, the Department returned to its normal practice of conducting background checks for firearms sales within the 10-day waiting period, unless further investigation was permitted under the statute.  The evidence also shows that the Department's inability to process applications timely from March 2020 to July 2020 was due to extraordinary circumstances, including the pandemic, mandated social distancing, a large spike in firearms sales, and the Department's office closures due to public disturbances.  Because the uncontested evidence establishes that the issue was resolved before Campos filed the petition in August 2020, the court should have denied the petition as moot.

"An issue becomes moot when some event has occurred which 'deprive[s] the controversy of its life.' "  (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 257.)  "The policy behind a mootness dismissal is that 'courts decide justiciable controversies and will normally not render advisory opinions.' "  (*Ibid.*)

Campos argues that the Department's "authority to delay firearms beyond the 10-day waiting period for reasons other than [the statute's] enumerated reasons" is still "live."  In agreeing with Campos, the trial court found the matter was not moot because the Department had "not rescinded the challenged policy—i.e., the Department continues to claim that section 28220(f) provides up to 30 days to complete firearm background checks for any reason."  The court further explained:  "[T]he record indicates the

12

challenged policy remained publicly posted as recent as May 26, 2022, and [Campos] assert[s] it continues to remain live on the website."

Based on our review of the record, we disagree with the trial court's assessment that the Department had a continuing policy permitting it to delay the completion of background checks beyond 10 days "for any reason." By the time of the trial court's ruling, the temporary delays were already a thing of the past and had been remedied for two years. There is no evidence that the Department exceeded the 10-day waiting period unlawfully at any time between July 2020 and July 2022, when the trial court made its ruling. The Department never stated it had a policy of delay for "any reason" and the evidence confirms it never had such a policy. The Department's policy and practice has always been to complete firearms background checks within the 10-day waiting period, to specifically delay firearms transactions only when allowed by the statute, and to follow each of statute's requirements. During the pandemic, the Department did everything it could to complete background checks within 10 days, including encouraging and mandating overtime, redirecting staff from other units within the Department, offering flexible and alternative work schedules, and expediting hiring.

Even with all the challenges that the Department faced, including the large increase in gun purchases, the Department still averaged less than 13 days to complete authorizations during the early months of the pandemic, according to Campos's own calculations. Even the most delayed background checks during that time were completed by day 18. The evidence shows the Department did not approach taking "up to 30 days," as claimed by Campos. Moreover, it is undisputed that the pandemic and social unrest caused the temporary delays. Simply put, there is no substantial evidence the

13

Department had a continuing policy to extend the length of time for background checks beyond 10 days "for any reason."

The Department's website notification did not establish the existence of any such policy. On the contrary, the Department's website stated it "strive[s] to . . . complete [background] checks in the shortest time possible." It noted that before the pandemic, the Department "typically completed these checks" within the 10-day waiting period. Consistent with the evidence in the record, the Department explained that the pandemic affected the Department's ability to increase its staff sufficiently to handle the "sustained increase in firearms and ammunitions transactions without compromising" employee health and safety. Again, pointing to the unprecedented situation the Department faced in the early months of the pandemic, the Department merely stated that "circumstances may compel that background checks are completed after the expiration of the 10-day waiting period for firearms purchases."

The trial court apparently relied on the first sentence of the Department's website notification, which stated: "Under Penal Code section 28220(f)(4), the Department[] has up to 30 days to complete background checks on firearms purchasers." But this is merely a correct statement of the cited Penal Code provision. Under the circumstances described in section 28220, subdivision (f)(1), subdivision (f)(4) plainly does give the Department up to 30 days to complete a background check. (§ 28220, subd. (f)(4).) The website notice did not state that the Department legally had up to 30 days even if the circumstances specified in subdivision (f)(1) were not present. Considering the totality of the record, including the undisputed fact that the Department had been complying with the 10-day waiting period for two years after the temporary period of delays in 2020, this single sentence of the

14

website notification did not establish that the Department had a continuing policy to take up to 30 days for any reason.

Because there were no ongoing delays to be remedied by the time Campos filed his petition, and no continuing Department policy to take over 10 days to conduct a background check, there was no live controversy and Campos could not be granted any effective relief.  The trial court erred by finding that the petition was not moot.

> 2. *The Circumstances that Led to Delayed Background Checks Are Unlikely to Recur and the Law Has Since Changed*

We next consider whether to exercise our discretion to decide the merits notwithstanding the mootness issue.  An appellate court retains discretion to decide a moot issue if it "raises an important issue likely to recur" and "regularly evades timely appellate review."  (*Cerletti v. Newsom* (2021) 71 Cal.App.5th 760, 766; see also *In re Christina A*. (2001) 91 Cal.App.4th 1153, 1158 [an exception to the rule of mootness exists "where the question to be decided is of continuing public importance and is one ' " 'capable of repetition, yet evading review.' " ' "].)  Because the circumstances that led the Department to delay processing firearms applications are unlikely to recur and do not regularly evade review, and the law has since changed to allow the Department to delay transfer of a firearm up to 30 days in an emergency, this exception is inapplicable.

Although Campos alleges that the pandemic and social unrest were "hardly once-in-a-lifetime events," we disagree.  As this court has noted, "[t]he COVID-19 pandemic has been a ' "unique, nonrecurring event." ' " (*Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1127; see also *People v. Lopez* (2022) 75 Cal.App.5th 227, 232 [noting "the unique and substantial public health risks created by the ongoing global

15

pandemic"]; *Rowan v. Kirkpatrick* (2020) 54 Cal.App.5th 289, 297 ["acknowledg[ing] the unprecedented nature of the circumstances presented by the COVID-19 pandemic and the hardships it may have caused."].) When combined with the civil unrest that caused the Department's offices to shut down for several days in early June 2020, and the concurrent surge in gun sales throughout this period, the events facing the Department are appropriately characterized as a once-in-a-lifetime occurrence.

The uncontested record before us shows that the Department has always completed background checks within 10 days, except for the first few months of the pandemic or when statutorily authorized. Only because of the extraordinary confluence of unprecedented events did the Department take longer to perform its background checks for a few months, and even then, the delays were mostly trivial. Therefore, Campos is merely speculating when asserting that the Department will face circumstances again that lead to a delay in processing firearms applications. We will not decide a moot appeal based on speculation about future hypothetical facts. And it would not be appropriate for us to tie the Department's hands in carrying out its mission of protecting the public in some unknown future emergency we can only speculate about.

The legal issue presented here is also unlikely to recur because the Legislature amended the governing law while this appeal was pending. On September 26, 2023, the Governor signed into law Assembly Bill No. 1406 (2023-2024 Reg. Sess.) (Assem. Bill No. 1406). Effective January 1, 2024, this bill amends section 28220 to authorize the Department to delay the delivery of a firearm for up to 30 days if an emergency condition has caused it to be unable to review records to determine a purchaser's eligibility within the 10-day waiting period. (Stats. 2023, ch. 244, § 1 (Assem. Bill No. 1406) [adding

16

§ 28220, subd. (g)(6)].)  Because the governing law has changed, and the case is otherwise moot, no purpose would be served by clarifying a prior version of the law that will no longer be in effect by the time the remittitur is issued. (See *MHC*, *supra*, 106 Cal.App.4th at p. 215 ["[W]e decline to exercise our discretion to resolve the moot questions presented here . . . [because] any such resolution would be unlikely to provide guidance for future . . . disputes.").]

3. *Other Courts Have Dismissed Challenges to Early Pandemic Responses as Moot*

Other courts have similarly dismissed as moot actions arising in response to pandemic conditions.  (See *Cerletti v. Newsom*, *supra*, 71 Cal.App.5th at pp. 763–764 [controversy was moot where "one-time payments" to undocumented immigrants were provided "during an extraordinary pandemic, which caused a state of emergency and a temporary pause in the operation of the Legislature; there . . . is nothing in the record suggesting that it is likely to recur."]; *Brach v. Newsom* (9th Cir. 2022) 38 F.4th 6, 12 ["join[ing] numerous other circuit courts across the country that have recently dismissed as moot similar challenges to early pandemic restrictions."]; *Clark v. Governor of New Jersey* (3rd Cir. 2022) 53 F.4th 769, 778 ["Regarding the likelihood that the same pandemic conditions we faced in 2020-21 will repeat themselves, it is hard to imagine that we could once again face anything quite like what confronted us then."].)

Similar to Campos here, the parents in *Brach* sought "an insurance policy that the schools will never ever close, even in the face of yet another unexpected emergency or contingency."  (*Brach*, *supra*, 38 F.4th at p. 9.)  The Ninth Circuit refused to decide the merits of such a hypothetical future dispute, declaring that "our jurisdiction is limited to live controversies and

17

not speculative contingencies." (*Ibid*.) So too is our jurisdiction. " ' "[T]he duty of this court . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.)

The cases cited by Campos are not to the contrary. For example, in *Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, the court concluded that there was "an actual controversy regarding the scope of the Governor's authority" to issue more than 50 different executive orders, and "the Governor clearly intend[ed] to continue [issuing such orders] during the COVID-19 state of emergency." (*Id.* at p. 1111.) There, the pandemic was still an ongoing threat, and the Governor intended to keep issuing orders even though his authority to do so was challenged. (*Ibid*.) Here, on the other hand, the pandemic-related issues affecting the Department's ability to process applications timely have been resolved, and the Department does not intend to delay the processing of applications. The other cases cited by Campos are distinguishable on similar grounds. (See *County of Los Angeles Department of Public Health v. Superior Court* (2021) 61 Cal.App.5th 478, 487 ["The County has made it clear that it may re-impose its [challenged order] if the region faces another surge."]; *Flores v. Garland* (9th Cir. 2021) 3 F.4th 1145, 1150 [holding that the "appeal is not moot, nor does the government maintain that it is" where the government stated it might engage in the disputed practice "in the future, either during the current pandemic or a future public health emergency, if such practice were permitted."])

18

In sum, we conclude that this case should have been dismissed as moot because (1) the Department resolved the backlog in applications before the petition was filed and two years before the trial court granted relief, and no backlog has recurred despite continuing high levels of firearm sales, and (2) the issues were caused by an extraordinary situation that is unlikely to occur, and there are no exceptions to the mootness rule for which we choose to exercise our discretion to consider the merits.

The proper disposition in these circumstances is to reverse the trial court's judgment and remand with directions to dismiss the case as moot.[2] (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129,134–135; *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1585 ["Where the trial court has decided a nonjusticiable controversy, the appropriate course is to reverse its judgment and to remand the matter to the trial court with directions to dismiss the action."].)

---

[2] Campos asks us to take judicial notice of legislative history materials for section 28220, subdivision (f). Because the case is moot, these documents are not necessary to resolve the appeal. We therefore deny the request. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

## DISPOSITION

The trial court's judgment is reversed. The matter is remanded with directions to the trial court to dismiss the underlying action as moot. Appellants are entitled to recover their costs on appeal.

BUCHANAN, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.